UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re
MARILYN FESSLER

    Debtor.                            Case No.       11-53376
                                                Chapter 13
                                                Hon. Steven W. Rhodes

_____

## BELFOR USA GROUP, INC.'S MOTION TO DISMISS DEBTOR'S BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 1307

Belfor USA Group, Inc. ("Belfor"), by and through its attorneys, Jaffe Raitt Heuer & Weiss, P.C., submits its Motion to Dismiss Debtor's Bankruptcy Case Pursuant to 11 U.S.C. § 1307(c) and states as follows:

### FACTUAL BACKGROUND

**A.    THE PARTIES**

1.    On or about February 21, 2007, Belfor and Creative Steps Learning Centers, Inc. d/b/a English Oaks Montessori and School of Protocol ("Creative Steps") entered into a written agreement whereby Belfor agreed to perform certain repairs to a building used by Creative Steps and Creative Steps agreed to pay for the repairs.  Specifically, Creative Steps agreed to tender any proceeds it received from its insurance company for repairs to the building directly to Belfor. *See* **Exhibit 1**.  Debtor Marilyn Fessler ("Debtor") is the sole shareholder of Creative Steps.

2.    Though Belfor fully performed its obligations under the terms and conditions of the Agreement, and despite Belfor's repeated requests, Creative Steps, vis-à-vis the Debtor, failed to turn over, endorse and otherwise tender all insurance drafts as produced to Belfor (the "Insurance Proceeds") leaving an unpaid balance of $43,601.08.  Indeed, the Debtor admitted during her 341 Meeting of Creditors that she used the Insurance Proceeds for other purposes than

to pay Belfor.

## B. STATE COURT PROCEEDINGS AND JUDGMENT FOR CONVERSION

3.     On July 21, 2008, Belfor filed its Complaint against Creative Steps for breach of contract, implied contract, unjust enrichment, lien foreclosure and conversion in the Oakland County Circuit Court, Case No. 2008-093170-CK ("State Court Action").

4.     On March 18, 2010, after granting summary disposition in Belfor's favor for breach of contract, implied contract, unjust enrichment, conversion and lien foreclosure, the State Court entered judgment against Creative Steps in the amount of $142,800.00 plus interest and attorneys fees (the "Judgment").[1]  *See* **Exhibit 2**.

## C. DEBTOR'S CONDUCT POST-JUDGMENT

5.     On May 20, 2010, the Court entered a Writ/Request and Order to Seize Property to satisfy the Judgment (the "May 20 Order").  *See* **Exhibit 3**.

6.     On June 2, 2010, a court officer served the May 20 Order on the Debtor and obtained a small payment of $1,850.00 towards the Judgment.  *See* **Exhibit 4**.

7.     On June 4, 2010, the Debtor formed a new for-profit corporation, Cedar Bank Investments, Inc. ("Cedar") just two days after being contacted by the court officer and less than two months after Creative Steps filed its annual report and renewal.  *See* **Exhibit 5**.

8.     On June 9, 2010, the Debtor filed an assumed name certificate to transact business on Cedar's behalf in the name of "English Oaks Christian Montessori Academy."  Notably, this new d/b/a is nearly the same as Creative Steps' previous d/b/a, "English Oaks Montessori and School of Protocol."  *See* **Exhibit 6.**

9.     The Debtor continued operation of the business uninterrupted using the same

---

[1] Having ruled in Belfor's favor that Creative Steps committed acts of conversion by using the Insurance Proceeds for other purposes than to pay Belfor, the State Court awarded Belfor treble damages.

2086356.1

building, the same employees, the same furniture and other assets, and serving the same students. The present website for English Oaks Montessori Christian Academy states that:

> English Oaks Montessori has been located in White Lake, Michigan since 2005 and has been in the area since 1995. English Oaks is owned by Marilyn Meissner who holds certification in Montessori credentials.

**Exhibit 7** (material from http://englishoaksmontessori.com).

10.     The school continued to operate under Creative Steps' state-issued license, issued to Creative Steps Learning Centers, Inc. *See* **Exhibit 8**.

11.     Continuing its attempts to collect on the Judgment, on March 2, 2011, the State Court issued a new Request and Order to Seize Property, which was substantively the same as the previous Order ("March 2nd Order"). *See* **Exhibit 9**.

12.     On March 23, 2011, court officers arrived at the building used by Creative Steps (and now Cedar) to enforce the Order. *See* **Exhibit 10** (Affidavit of Michael Gazzarato).

13.     An employee of the school came to the locked door, but refused to grant the court officers entry, stating that the Debtor instructed her not to let any court officers into the building, regardless of the State Court's March 2nd Order. *Id.* A few minutes later, the Debtor arrived and stated that the officers could not enter because she had "changed the name" of her business. She also said she had just spoken with the Chief of Police, who told her to inform the court officers that if they entered the building they would be arrested for trespassing <u>because the legal name of the business had changed</u>. *Id.*

14.     Police officers arrived on the scene, first an officer, then a sergeant, and finally the Chief of Police. *Id.* <u>The Chief told the Debtor that she could be held in contempt of court for non-compliance, but the Debtor said she "did not care" and the officers "were not getting into the building."</u> *Id.* at p. 4. During this time, the Debtor made several calls to people she claimed

were her lawyers, and to others whom she told to "come and get their property before it was seized." She also threatened to call the news and generally created a scene. *Id*. at p. 3-4.

15.     On April 20, 2011, Belfor filed its Ex Parte Motion and Brief for Order that Defendant's Principal, Marilyn Meissner, a/k/a Marilyn Fessler Show Cause Why She Should Not Be Held In Contempt of Court and Why a Preliminary Injunction Should Not Issue ("Contempt Motion") in the State Court Action.  Specifically, Belfor sought to amend the Judgment to add the Debtor as a party as a judicial sanction for her contempt.  A hearing on the Contempt Motion was scheduled for May 11, 2011.

16.     On May 10, 2011, one day before the hearing on the Contempt Motion, Creative Steps filed its voluntary Chapter 7 petition with the Bankruptcy Court.  *See* Case No. 11-53366 (Shefferly).

17.     On May 24, 2011, Creative Steps filed its Schedules and Statement of Financial Affairs ("Schedules").  [Doc. No. 7].  Notably, the Schedules identify zero dollars in assets and Belfor as the **one and only** creditor of the estate.  *Id*.

### D.     DEBTOR'S CHAPTER 13 PETITION AND 341 MEETING.

18.     On May 10, 2011, the day before the hearing on the Contempt Motion, the Debtor also filed her voluntary Chapter 13 petition ("Petition") with the Bankruptcy Court.

19.     On May 24, 2011, the Debtor filed her Summary of Schedules and Statement of Financial Affairs ("Schedules").  [Doc. No. 11].

20.     Pursuant to her Schedules, the Debtor owns no real property, has one secured creditor and a total of seven unsecured creditors.   Specifically, the Debtor identified the following unsecured creditors:

| | |
|---|---|
| Belfor USA Group, Inc. | $142,800 |

| Comerica Bank | Unknown |
|---|---|
| Don Chadwick | $300 |
| Elizabeth Smith (relative) | $7,500 |
| Ford Credit | $450 |
| Kohl's | $364 |
| PNC Bank | Unknown |

*See* Schedule F [Doc. No. 11]. Notably, Belfor's unsecured claim amounts to 94% of the Debtor's unsecured claims.

21. During her section 341 meeting, the Debtor indicated that the primary reason for filing her Chapter 13 petition was because of Belfor's attempts to add her as a party defendant to the Judgment pursuant to the Contempt Motion. Indeed, the Debtor stated that she was current on all her other debts.

## ARGUMENT

### A. DEBTOR'S BANKRUPTCY CASE SHOULD BE DISMISSED "FOR CAUSE"

22. "A bankruptcy court has the power to dismiss a Chapter 13 petition upon a finding that the debtor did not bring it in good faith." *In re Alt*, 305 F.3d 413, 418 (6th Cir. 2002); *see also In re Banks*, 267 F.3d 875, 876 (8th Cir. 2001); *In re Lilley*, 91 F.3d 491, 496 (3d. Cir. 1996). "Most courts ascribe the basis for such a dismissal to 11 U.S.C. § 1307(c), which-although it does not expressly address good faith- does permit a bankruptcy court to dismiss a Chapter 13 petition "for cause." *In re Alt*, 305 F.3d at 418-19; 8 COLLIER ON BANKRUPTCY ¶ 1307.04[10] (16[th] ed.) ("Section 1307(c) states that the court may dismiss or convert a case for cause, "including" the 10 types of cause enumerated in the section. Because the word

"including" is not exhaustive, the court may dismiss for causes other than those enumerated. Most courts have held that lack of good faith can be cause for dismissal or conversion of a chapter 13 case.").

23.     The Sixth Circuit has adopted the "totality of the circumstances" test for determining whether a Chapter 13 petition was filed in good faith and set forth a "nonexhaustive" list of factors, which include: (1) the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; (2) the timing of the petition; (3) how the debt arose; (4) the debtor's motive in filing the petition; (5) how the debtor's actions affected creditors; (6) the debtor's treatment of creditors both before and after the petition was filed; and (7) whether the debtor has been forthcoming with the bankruptcy court and the creditors. *Alt*, 305 F.3d at 419-20; *citing In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992).

24.     Moreover, "[i]t is important to note that in the context of a Motion to Dismiss a Chapter 13 case, the courts consistently held that once the debtor's good faith has been challenged, the debtor has the burden of proving that the petition for relief was filed in good faith." *In re Newsome*, 92 B.R. 941, 943-44 (M.D. Fla. 1988) (citations omitted). "Unmistakeable manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud.  We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse." *In re Waldron*, 785 F.2d 936, 941 (11th Cir. 1986) (reversing lower court's decision with instructions to dismiss the debtor's petition).

25.     Furthermore, "[t]wo-party disputes…simply have no place in bankruptcy.... Many courts have found that such filings violate the 'good faith' prerequisite to invoking the

2086356.1

bankruptcy court's equitable jurisdiction." *See In re Shead*, 2008 WL 1995373, *3 (S.D. Tex. 2008) (*quoting In re Anderson Oaks L.P.*, 77 B.R. 108, 112 (Bankr.W.D.Tex.1987)). At its plainest, the Debtor's admission that she only brought the petition to impede the collection efforts of Belfor, particularly the Contempt Motion, and the fact that the Debtor admitted she is current with her other creditors is a petition filed in bad faith.

### 1. The Judgment Would be Non-Dischargeable under Section 523(a)(6).

26.     Belfor obtained a judgment for conversion against Creative Steps of which the Debtor was the sole shareholder. Pursuant to the Contempt Motion, Belfor sought, as a judicial sanction, an order amending the Judgment to add the Debtor has a party. *See Electrical Workers Pension Trust Fund of Local Union #58 v. Gary's Electric Service Co.*, 340 F.3d 373, 382 (6th Cir. 2003) (holding that a corporate defendant's non-party owner can be subject to contempt proceedings and judicial sanctions).

27.     11 U.S.C. § 523(a)(6) provides for the following exception to discharge:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title…does   not   discharge   an   individual   from   any   debt—
                              *     *     *
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

28.     Under 11 U.S.C. § 523(a)(6) an injury is "willful" if the debtor desired to cause the  consequences of his act or if the injury was <u>substantially certain</u> to result. *Mich. Web Press, Inc. v. Wilcox (In re Wilcox)*, 310 B.R. 689, 698 (Bankr. E.D. Mich. 2004) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 466 (6th Cir. 1999)). There does not need to be a specific intent on behalf of the debtor to injure the creditor. *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298 (6th Cir. 2004). Where the debtor must have known, and therefore believed, that economic damage to the creditor was

2086356.1

substantially certain to result from his actions, it is a willful injury. *Id.*

29.     Under 11 U.S.C. § 523(a)(6) "malicious means in conscious disregard of one's duties or without just cause or excuse; <u>it does not require ill-will or specific intent</u>." *Trantham*, 304 B.R. at 308 (*quoting Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)). "Malice" for purposes of 11 U.S.C. § 523(a)(6) is not only "a wrongful act, done intentionally, without just cause or excuse" but is also where a debtor acts "in conscious disregard of one's duties." *In re Stollman*, 4074 B.R. 244, 265 (Bankr. E.D. Mich. 2009).

30.     In *In re Penning*, 22 B.R. 616 (Bankr. E.D. Mich. 1982), the debtor was the president and managing member of a family owned business. The business, through the debtor, entered into an agreement to sell snowmobiles. Under the terms of a security agreement, the business was to hold the proceeds in trust for a secured party. *Id.* at 618. Thereafter, the business defaulted on its obligations. The business, through the debtor, disposed of collateral in express violation of the security agreement with plaintiff. The Court held that the individual debtor was "guilty of a willful and malicious conversion" of the plaintiff's property because the "<u>debtor actively participated in the conversion</u>". The debtor made the decision to dispose of the collateral, and the decision not to turn over the funds derived from their disposition to plaintiff. The Court determined that this debt was nondischargeable by virtue of section 523(a)(6). *Id.* at 219.

31.     In the case at bar, there can be no dispute that, pursuant to the resulting Judgment in the State Court Action, the Insurance Proceeds were a property right belonging to Belfor. Additionally, as in *In re Penning*, the Debtor's use of the Insurance Proceeds without Belfor's consent and without turning the proceeds over to Belfor constitutes conversion of Belfor's property.

2086356.1

32.     Therefore, it follows that the Debtor's debt to Belfor would be nondischargeable by virtue of 11 U.S.C. § 523(a)(6) had the Debtor filed her petition under Chapter 7 instead of Chapter 13.

### 2.     The Timing of the Petition is Indicative of Bad Faith.

33.     The Debtor filed her voluntary petition the <u>day before the hearing on the Contempt Motion was scheduled</u>.  That fact alone is indicative of the Debtor's bad faith.

### 3.     The Debt Arose from the Debtor's Acts of Conversion and Contempt of Court

34.     As discussed above, the debt arose as a result of the Judgment in the State Court Action finding in favor of Belfor on, among others, its claims for conversion.  The State Court awarded Belfor <u>treble damages</u> for Creative Steps' acts of conversion.  Since the Debtor was Creative Steps' sole shareholder, the acts of conversion were taken by the Debtor.

35.     Moreover, the Debtor, in her own personal capacity, attempted to thwart collection of the Judgment by creating a new entity (Cedar Bank Investments) and operating a substantially similar business as Creative Steps (even using a similar English Oaks name) using the new entity.  The Debtor took these actions within a few days of Belfor's attempts to collect on its Judgment.  The Debtor's acts of contempt were the basis of the Contempt Motion in the State Court Action.  As discussed above, the Debtor filed her Petition the day before the hearing on the Contempt Motion.

### 4.     The Debtor's Motives in Filing Her Petition Were to Avoid Answering the Contempt Motion in the State Court Action and to Prevent Belfor from asserting a Section 523(a)(6) Claim.

36.     This is a two-party dispute that has no place in the Bankruptcy Court.  *See In re Shead*, 2008 WL 1995373, *3 (S.D. Tex. 2008).  The fact that Belfor is essentially the only unsecured creditor that the Debtor is attempting to restructure and/or avoid makes this action a

2086356.1

two-party dispute, which is already being litigated in a non-bankruptcy forum. The facts of this case are similar to those of *In re Newsome*, 92 B.R. 941 (M.D. Fla. 1988), where the court found the debtor acted in bad faith in filing a chapter 13 petition when the debtor had only one unsecured creditor. In *Newsome*, the debtor filed his voluntary petition under Chapter 13 with a single creditor holding a general unsecured claim. The creditor moved to dismiss the debtor's bankruptcy case on the grounds that the debtor filed his petition in bad faith. In support of his motion, the creditor argued that he was the only unsecured creditor of the debtor; that there were no other bona fide unsecured creditors whose claim the debtor sought to adjust; and the plan submitted by the debtor is merely an attempt by the debtor to get out of his contractual obligation. *Id*. at 942. The court agreed:

> This Chapter was designed to enable a financially distressed individual Debtor with a regular income to obtain adjustment of debts. Under the scheme of this Chapter, the debtor may achieve this by proposing a plan which deals with the Debtor's debts in general including even secured obligations with the exceptions set forth in Section 1322(a) which is not relevant here. A plan proposed by a Debtor which is designed to deal with the debt of one creditor only, and designed to restructure and scale down the contractual obligation of a Debtor, which is exactly what is involved in this case, is deemed suspect at least and may not have been filed in good faith, unless the debtor is able to establish that the petition was filed for a legitimate purpose consistent with the provisions of this Chapter.

> \*       \*       \*

> As noted this is nothing more than a two-party dispute which is already being litigated in a non-bankruptcy forum. For these reasons, it is appropriate to deny confirmation of the Debtor's plan on the basis that the plan was not filed in good faith.

*Id*. at 943. Similarly, in *In re Waldron*, 785 F.2d 936 (11th Cir. 1986), the court reversed the district court's decision and instructed the district court to dismiss the debtor's petition. The court reasoned that the debtors' petition listed one single unsecured creditor and they were otherwise completely solvent. The court found that the debtors abused Chapter 13 by filing their

petition in order to reject a contract with the creditor. The court concluded that the debtors'

purpose was an "abuse of Chapter 13 for a greedy and unworthy purpose." *Id*. at 941. *See also*

*In re Cedar Shore Resort, Inc.*, 235 F.3d 375 (8th Cir. 2000) (finding that debtor's purpose in

filing bankruptcy was to thwart a shareholder lawsuit, "not to attempt to reorganize on solid

ground and try again. Because the 'powerful equitable weapons' of the bankruptcy court should

be 'available only to those debtors ... with 'clean hands' and not to those debtors 'whose

overriding motive is to delay creditors without benefitting them in any way or to achieve

reprehensible purposes,' the bankruptcy court did not abuse its discretion in dismissing the

case.") (citations omitted).

      37.     The facts involved in this case are more egregious than *Newsome*. Here, the

Debtor aided in the conversion of Insurance Proceeds and thwarted Belfor's attempts at

collecting on its Judgment. *Newsome* was filed for the purpose of getting out of a contractual

agreement with a single creditor. The Debtor's Petition in this case was to avoid appearing

before the State Court and answering the Contempt Motion filed by Belfor.

      38.     The Debtor identifies six other unsecured creditors whose claims amount to

roughly 6% of the Debtor's total unsecured debts while Belfor accounts for 94%. Moreover,

during the Debtor's meeting of creditors, the Debtor indicated that her primary reason in filing

her Chapter 13 petition was in response to Belfor's Contempt Motion. By selecting to file under

Chapter 13, the Debtor precluded Belfor from bringing an action under 11 U.S.C. § 523(a)(6).

However, the Debtor is not permitted to use Chapter 13 has a sword. *Newsome*, 785 F.2d at 940

("The Bankruptcy laws are intended as a shield, not as a sword.") (citations omitted). Clearly,

the Debtor's motives in bringing her Chapter 13 Petition was to avoid answering for her

misconduct in the State Court Action and to preclude Belfor from bringing a Section 523(a)(6)

claim that would be available to Belfor in a Chapter 7 proceeding. The Debtor has abused the bankruptcy process by using it as a sword to protect her own bad faith conduct and to thwart Belfor's attempts to hold the Debtor accountable for her judicial contempt. Accordingly, Belfor's Motion to Dismiss should be granted.

### 5. *Debtor's Treatment of Creditors Pre-Petition was Egregious.*

39. As discussed above, the Debtor took the following actions to impede Belfor's attempts to collect on the Judgment:

(a) On June 4, 2010, the Debtor formed a new for-profit corporation, Cedar Bank Investments, Inc. just two days after being contacted by the court officer and less than two months after Creative Steps filed its annual report and renewal. *See* **Exhibit 5**.

(b) On June 9, 2010, the Debtor filed an assumed name certificate to transact business on Cedar's behalf in the name of "English Oaks Christian Montessori Academy." Notably, this new d/b/a is nearly the same as Creative Steps' previous d/b/a, "English Oaks Montessori and School of Protocol." *See* **Exhibit 6.**

(c) The Debtor continued operation of the business uninterrupted using the same building, the same employees, the same furniture and other assets, and serving the same students.

(d) The school continued to operate under Creative Steps' state-issued license, issued to Creative Steps Learning Centers, Inc. *See* **Exhibit 8**.

(e) On March 23, 2011, the Debtor refused to allow court officers to enter the building and told the court officers that she had "changed the name" of her business and that if they entered the building they would be arrested for trespassing <u>because the legal name of the business had changed</u>.

12

(f)     On May 10, 2011, one day before the hearing on the Contempt Motion, Creative Steps filed its voluntary Chapter 7 petition with the Bankruptcy Court identifying <u>zero dollars in assets and Belfor has the **one and only** creditor of the estate</u>.

(g)     On May 10, 2011, one day before the hearing on the Contempt Motion, the Debtor filed her voluntary Chapter 13 petition listing Belfor as holding 94% of her unsecured debts.

(h)     On June 24, 2011, Belfor attended the Debtor's Meeting of Creditors and the Debtor identified her primary reason for filing her Chapter 13 Petition was because of Belfor's Contempt Motion and that she was current on her other debts.

40.     Clearly, the Debtor's treatment of Belfor was in bad faith and in contempt of the State Court's orders.  The Debtor furthered her bad faith actions by using the Bankruptcy Court to avoid having to answer for her egregious misconduct in the State Court Action.  Accordingly, the Debtor's Chapter 13 Petition should be dismissed.

## CONCLUSION

41.     For the reasons discussed above, Belfor USA Group, Inc. respectfully requests that this Court grant its Motion to Dismiss pursuant to 11 U.S.C. §1307(c) and dismiss the Debtor's bankruptcy case.

**JAFFE, RAITT, HEUER & WEISS, P.C.**

Dated: July 20, 2011              By:     /s/ Jonathan C. Myers
                                          Jonathan C. Myers (P69972)
                                          Alicia S. Schehr (P54236)
                                          Counsel to Belfor USA Group, Inc.
                                          27777 Franklin Road, Suite 2500
                                          Southfield, Michigan 48034-8214
                                          (248) 351-3000
                                          jmyers@jaffelaw.com
                                          aschehr@jaffelaw.com

13

# EXHIBIT 1

1068348.1

# BELFOR (●)
## PROPERTY RESTORATION

# WORK AUTHORIZATION
License # 2132'60913

The undersigned (insured) _English Oaks Montessori School_ of
_891 Union Lake_  City _White Lake_  State _MI_  Zip

represents that he/she/they are owners of/or agent for the hereinafter specified property (and/or its contents) and hereby authorize and direct Belfor USA Group, Inc. ("Contractor") to provide all labor, equipment and materials required to properly repair the specified real property, contents or structure commonly known as:

_891 Union Lake_  City _White Lake_  State _Lu_  Zip _48386_

It is understood and agreed that Contractor will perform all repair work in a good and workmanlike manner in accordance with our General Conditions, will have a policy of insurance in full force, will comply with local safety standards and will perform all work according to local building codes. A one-year workmanship warranty will be presented upon full payment for the work performed. ~~The undersigned hereby transfers, assigns and conveys to Contractor~~ ~~his/her/their right, title and interest in and to the insurance policy proceeds and all drafts for work performed or to be performed by Contractor. Accordingly, undersigned authorizes and directs their insurer (named below) to make "Belfor USA" a payee on all insurance drafts for all insurance work performed by Contractor on the above damaged property. The undersigned also agrees to immediately endorse and tender all drafts as produced to the Contractor.~~

All insurance work performed by the Contractor is subject to the terms of the insured policy of insurance which sets the scope and price of the work based upon industry standards. All uninsured code-upgrade work, depreciation and insurance deductibles are the responsibility of the undersigned or Owner. The undersigned has the right to cancel this Work Authorization prior to the midnight of the 3rd business day of signing this agreement by writing and delivering a written cancellation request to Contractor by such time. The undersigned also agrees to and understands the General Conditions stated below.

_The parties agree to have the 1st Floor completed by March 6, 2007. MEM_

Date: _____

$ _N/A_                _2, 21, 07_
AMOUNT (IF KNOWN)        DATE

X _Andrew E. Nissimov_
INSURED-OWNER-AUTHORIZED REPRESENTATIVE

_David McBride_
BELFOR REPRESENTATIVE

_____
INSURED-OWNER-AUTHORIZED REPRESENTATIVE

_____
INSURANCE COMPANY

_____
POLICY NUMBER

### General Conditions

Owner agrees to allow timely inspections by municipal inspectors and/or mortgage company agents and to assist with obtaining any third party payee signatures on all insurance drafts so that Belfor can be timely paid. If for any reason your claim is denied by your insurance carrier or they refuse to pay the costs of any and/or all insurance work performed by Contractor, or you otherwise delay or prevent the payment of said insurance draft or use it for other purposes, then the insured/owner(s) of the above mentioned property will be severally liable for all costs of services performed. The Contractor and undersigned acknowledge and agree that the Contractor shall have no liability for, and shall be indemnified and held harmless from and against, all claims, damages, liabilities and costs arising out of or relating to the presence, discovery, or failure to discover, remove, remediate or abate so by the insured's policy of insurance, remediation is part of the scope of work and such work is directed by an Industrial Hygienists protocol and clearance testing. If for any reason the amount due under this Work Authorization is not paid when due, the Contractor shall be entitled to its expenses and attorneys' fees incurred in the collection of this agreement with interest on the unpaid balance at the rate of 1.5% per month or the rate prescribed by law. The undersigned permits Contractor to obtain a personal credit report to ensure that the insurance proceeds for this project are not in jeopardy. Any controversy or claim arising out of or relating to this agreement, or breach thereof, may be submitted to a court of competent jurisdiction. Contractor is in good standing with the Better Business Bureau. Contractor reserves their right to terminate this contract should the client breach any of its terms, conditions or the assurance of payment.

REV 9/04

BELFOR USA ...
HEADQUARTERS ...

www.belforusa.com

# EXHIBIT 2

1068348.1

**STATE OF MICHIGAN**

**IN THE 6TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

BELFOR USA GROUP, INC.

       Plaintiff/Counter-Defendant,

                               Case No. Case No. 08-093170-CI
                               Hon. D. Langford Morris

vs.

CREATIVE STEPS LEARNING CENTERS, INC.
d/b/a ENGLISH OAKS MONTESSORI AND SCHOOL OF PROTOCOL,

       Defendant/Counter-Plaintiff.

_____/

HYMAN LIPPITT, P.C.
DOUGLAS A. HYMAN (P-27695)
H. JOEL NEWMAN (P38459)
Attorneys for Plaintiff/Counter-Defendant
322 North Old Woodward Avenue
Birmingham, Michigan 48009
(248) 646-8292

DANIEL D. AMBROSE (P53053)
AMBROSE LAW GROUP
Attorneys for Defendant/Counter-Plaintiff
1007 E. West Maple Rd.
Walled Lake, MI 48390
(248) 624-5500

_____/

## JUDGMENT

At a session of said Court held in the
Courthouse, in the City of Pontiac,
County of Oakland, State of Michigan

_____

PRESENT: HON. D. LANGFORD MORRIS
CIRCUIT COURT JUDGE

The Court previously having entered Summary Disposition on all counts in favor of the Plaintiff, and having given Defendant until December 9, 2009 to move for reconsideration, Defendant's counsel having stated he did not move for reconsideration because the Summary Disposition was correct, the Court having ordered briefs on

damages no later than December 30, 2009, the Plaintiff having timely filed its brief and Defendant not having filed until January 27, 2010, the Court having heard the Plaintiff's Motion To Determine Damages and To Enter a Judgment in favor of Belfor, the Complaint seeking a sum certain and foreclosure, and the Court being duly advised in the premises;

*142,800*

**IT IS HEREBY ORDERED** that Defendant pay the Plaintiff $~~153,436.00~~ including attorney's fees and costs.

**IT IS FURTHER ORDERED** that Defendant pay the Plaintiff statutory interest in the amount of $8,722.40 to date and continuing at the rate of $15.40 per diem.

**IT IS FURTHER ORDERED** that Belfor's claim for foreclosure is granted in accordance with the following terms and conditions over the real property (the "Property") secured by the lien (as defined in the Complaint) which is land in the City of White Lake, Oakland County, Michigan, as is further described as follows:

Real estate situated in the Township of White Lake, Oakland County, State of Michigan, described as:

T3N R8E Sec 36 part of West path of NW beginning on East line thereof South 02-00-00 E 784.74 feet from North Section line thence South 02-00-00 East 215.8 feet then North 44-15-00 W 294.36 feet then North 88-00-00 East 202 feet to the beginning .50 AY546.

Commonly known as 891 Union Lake Road, White Lake, Michigan 48386.
Tax Parcel Identification Number: Y12-36-102-002.

If Defendant fails to pay Plaintiff the amounts above mentioned immediately upon the entry of this Final Judgment, Plaintiff may forthwith and without further order of this Court sell by foreclosure sale the interest held by Defendant as above described, and the costs and expenses of sale, shall publish notice of the Sheriff's judicial sale of real

estate on foreclosure for five (5) consecutive weeks and shall provide for posting of the notice in the proper manner. At the conclusion of said publication, Oakland County Sheriff shall conduct a foreclosure sale of the property. The purchase at such sale shall receive a Sheriff's Deed on the property which deed shall be free and clear of the claims of Defendant and of any persons or parties claiming any interest in the property under or through the acts of the Defendant.

Plaintiff, its successors or assigns, or any of the parties in this suit may become the purchaser of the property at the foreclosure sale; any bid by Plaintiff, its successors or assigns shall be deemed to be a credit bid against the indebtedness due Plaintiff up to the total amount of the indebtedness.

The Sheriff shall execute a deed to the purchaser on the sale. The sale shall be confirmed upon Motion duly noticed for hearing by any party to this action or by any purchaser at the foreclosure sale.

The Oakland County Sheriff, out of the proceeds of the sale, is to pay Plaintiff (or to Plaintiff's attorneys) the costs in this action to be taxed, and also the amount so ordered to be due as mentioned, and interest at the above rate from the date of this judgment, or so much of it as the amount realized from the sale of the premises mentioned previously will pay of the total sum due. The Sheriff is to take receipt for the amounts so paid, and file them with a report of the sale and of the Sheriff's doings; and the Sheriff is to bring the surplus monies arising from the sale, if any, into the Court without delay, to abide the further order of this Court.

Six months from the date of the sale, any and all persons claiming an interest in the property shall be forever barred and foreclosed of any from all equity of redemption

and any other claim of nay kind or nature against the property with exception being the claims for property taxes.

That if the moneys arising from the sale are insufficient to pay the amount ordered to be due to Plaintiff with interest, costs, and the expenses of sale as mentioned above, the Oakland County Sheriff shall specify the amount of the deficiency in the report of the sales, and that in the coming in and confirmation of the report of sale, Defendant, who this Court has judged personally liable for the debt secured by the mortgage, shall pay to Plaintiff the amount of deficiency, with interest from the date of the Sheriff's report.

This Court shall retain jurisdiction solely to enter any further Orders as are consistent with the remedies and relief available at law, including an award of a deficiency judgment if the amount bid is insufficient to satisfy the entire indebtedness as described in this Judgment.

This is a final order and closes this case.

JUDGE DENISE LANGFORD MORRIS

A TRUE COPY
RUTH JOHNSON
Oakland County Clerk - Register of Deeds
By _____ Deputy

_____
CIRCUIT COURT JUDGE

Approved as to form and substance

_____
Defendant's Counsel

{00131665}4

# EXHIBIT 3

1068348.1

Approved, SCAO

| | | Original - Court    2nd copy - Defendant |
|---|---|---|
| | | 1st copy - Officer    3rd copy - Plaintiff |

| STATE OF MICHIGAN | REQUEST AND ORDER TO | CASE NO. |
|---|---|---|
| JUDICIAL DISTRICT | SEIZE PROPERTY | 2008-093170-CI |
| 6th    JUDICIAL CIRCUIT | | |

Court address
1200 N. Telegraph Rd., Pontiac, MI 48341

Court telephone no.
(248) 858-1000

Plaintiff name(s) and address(es)
BELFOR USA GROUP, INC.
c/o Hyman Lippitt, P.C.
322 N. Old Woodward Ave.
Birmingham, MI 48009

v

Defendant name(s) and address(es)
CREATIVE STEPS LEARNING CENTERS, INC.
d/b/a ENGLISH OAKS MONTESSORI AND
SCHOOL OF PROTOCOL
819 Union Lake Rd., White Lake, MI 48386

*Oakland*

### REQUEST AND VERIFICATION

1. On 03/18/2010 _____ a judgment was granted in this case upon which the following is now due:
   Date

   Amount of judgment $ 142,800.00    Interest to this date $ 9,711.80    Postjudgment costs $ _____
   Total $ 152,511.80    Less credits received $ _____    *Balance due to date $ 152,511.80
   *Additional statutory interest, officer/sheriff fees, and expenses may be charged in addition to the unpaid balance according to law.

2. The plaintiff requests the court issue an order to seize the property of the following defendant(s):

   Creative Steps Learning Centers, Inc.  d/b/a    d/b/a English Oaks Montessori and School of Protocol
   Name    Date of birth (if available)
   Marilyn Meissner, Resident Agent,    7045 Cedarbank Dr., West Bloomfield, MI 48324
   Name    Date of birth (if available)

05/19/2010    P38459
Date    Plaintiff/Attorney signature    Bar no.

322 N. Old Woodward Ave.    Birmingham    MI    48009    (248) 646-8292
Address    City    State    Zip    Telephone no.

### ORDER

**TO ANY SHERIFF, DEPUTY SHERIFF, OR COURT OFFICER - YOU ARE ORDERED TO:**

1. Seize and sell, according to law, any of the personal property (as determined by the officer) of defendant(s) named above in the **Request and Verification** that is not exempt from seizure, as will be sufficient to satisfy the plaintiff's demand, costs, and any statutory fees and expenses. Personal property may include, but is not limited to motor vehicles or money, wherever located.
2. If sufficient personal property of defendant(s) cannot be found within your jurisdiction, seize and sell any of the real property of defendant(s) not exempt from seizure, as will be sufficient to satisfy plaintiff's demand, costs, and any statutory fees and expenses.
3. Collect from the sale of the property enough money to pay all of your statutory fees and statutory expenses.
4. Deposit proceeds of sale with the ☐ court ☐ plaintiff    after deducting statutory fees and statutory expenses.
5. ☐ Claim and Delivery Only: Seize the property described in the attached judgment for claim and delivery and deliver to the plaintiff(s); or if the property is not found in the possession of the defendant(s), levy the value of it.
6. You must endorse the month, day, year, and hour that you receive this order, and that time is the effective date of this order. You must return this order not less than 20 days, nor more than 90 days, from the effective date. If you have begun to serve this order on or before the return date, you may complete the service and return after the return date.
7. You may not continue collecting on this order after the return date except as indicated in item 6.

*COPY*

MAY 2 0 2010    RUTH JOHNSON    JUDGE DENISE LANGFORD MORRIS
Date    Oakland County Clerk - Register of Deeds    Judge    Bar no.
    By _____
    Court officer/Deputy sheriff
Order to be served by: _____
    Court officer/Deputy sheriff    Deputy

**ENDORSEMENT:** I certify that I received this order on _____ at _____
    Date    Time

_____
Court officer/Deputy sheriff

**TO THE DEFENDANT:** The person seizing property is required to provide you with a receipt of all money pa__
inventory of the property seized.

MC 19 (3/09) **REQUEST AND ORDER TO SEIZE PROPERTY**    MCL 600.2920, MCL 6__

# EXHIBIT 4

1068348.1

Approved, SCAO

To re-order this form, call (517) 337-1211
Target Information Management, Inc.

Original - Court    2nd copy - Officer
1st copy - Defendant    3rd copy - Plaintiff

| STATE OF MICHIGAN JUDICIAL DISTRICT 6th JUDICIAL CIRCUIT | PAYMENT RECEIPT AND INVENTORY OF SEIZED PROPERTY | CASE NO. 2008-043170-CI |
|---|---|---|

Court address _1200 N. Telegraph Rd, Pontiac, MI 48341 (248) 858-1000_ Court telephone no.

Plaintiff name(s) _BelFor USA Group Inc_

v

Defendant name(s) _Creative Learning Center Inc. d/b/a English Oaks Montessori School of Protocol_

TO THE OFFICER SEIZING PROPERTY: This form must be **filed with the court within 7 days** of the payment of funds or seizure of property.

_One Thousand Eight Hundred fifty dollars_

### RECEIPT FOR PAYMENT OF FUNDS

_Marilyn Mossner - Paid in by us_

I collected $ _1,850_ on _6-2-10 (Attorney)_ from _Creative Learning Centers, Inc d/b/a English Oaks Montessori School_

Date

Payment was made by ☒ cash. ☐ check no. _____ ☐ money order/cashier's check no. _Federal_

→ $1,850

a. Balance due .................................................................................. $ _152,511.80_
b. Minus payment ............................................................................. $ _1,850_
c. Statutory service and mileage fees ..........................................     $ _53.10_
d. Statutory percentage of line f. fees : 7% of _$1,850_ | 3% of _____   $ _129.50_
e. Statutory expenses .....................................................................     $ _533_
f. Plus total of lines c, d, and e. above ......................................... $ _715.60_
g. New balance due* ........................................................................ $ _151,377.10_

Additional statutory interest, fees (7% of first $5,000.00 and 3% of remaining balance), and expenses may be charged in addition to the unpaid balance.

### INVENTORY OF PROPERTY SEIZED

*No Property Seized as the money*

Attach additional sheets if necessary

| Quantity | Item/Description/Model | Type/V.I.N./Serial Number |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

_Defendant to Pay $250 bi-weekly beginning Immediately_

Real property seized (copy attached)

_Send Payments to BelFor Remmit PO Box 4448 Flint, MI 48504-0448_

Property may be redeemed by payment in full of the judgment and all statutory fees and statutory expenses. If the property is not redeemed, it will be sold at public sale and the proceeds applied to the judgment according to law. For further information call the individual named below.

I certify that I am authorized to seize property under MCR 3.106 and that the above statements are true and accurate.

_6-2-10_

Signature
Name (type or print) /Court Officer/Deputy Sheriff/  _Robert J Kerr Bar Cri 001_

Telephone no.

MC 82 (6/04) PAYMENT RECEIPT AND INVENTORY OF SEIZED PROPERTY      MCR 3.106

# EXHIBIT 5

# Michigan Department of Energy, Labor & Economic Growth

## Filing Endorsement

This is to Certify that the ARTICLES OF INCORPORATION - PROFIT

for

CEDARBANK INVESTMENTS, INC

ID NUMBER: 03324T

received by facsimile transmission on June 4, 2010 is hereby endorsed

Filed on June 4, 2010 by the Administrator.

The document is effective on the date filed, unless a subsequent effective date within 90 days after received date is stated in the document.



In testimony whereof, I have hereunto set my hand and affixed the Seal of the Department, in the City of Lansing, this 4TH day of June, 2010.

Director



Michigan.gov Home     DELEG Home | Sitemap | Contact | Online Services | Agencies

**CORPORATE ENTITY DETAILS**

Searched for: CEDARBANK INVESTMENTS, INC

ID Num: 03324T

Entity Name: CEDARBANK INVESTMENTS, INC

Type of Entity: Domestic Profit Corporation

Resident Agent: MARILYN E MEISSNER

Registered Office Address: 045 CEDARBANK DR  WEST BLOOMFIELD  MI  48324

Mailing Address:  MI

Formed Under Act Number(s): 284-1972

Incorporation/Qualification Date: 6-4-2010

Jurisdiction of Origin: MICHIGAN

Number of Shares: 60,000

Year of Most Recent Annual Report:

Year of Most Recent Annual Report With Officers & Directors:

Status: ACTIVE   Date: Present

| Assumed Names |
| --- |

| View Document Images |
| --- |

Return to Search Results        New Search

Michigan.gov Home  | DELEG Home | DELEG Contact | State Web Sites
Privacy Policy | Link Policy | Accessibility Policy | Security Policy

Copyright © 2001- 2011 State of Michigan

BCS/CD-2500 (12/09)

# DEPARTMENT OF ENERGY, LABOR & ECONOMIC GROWTH
## PROFIT CORPORATION INFORMATION UPDATE
## 2010



**Due May 15, 2010**      File Online at www.michigan.gov/fileonline

| Identification Number | Corporation name |
|---|---|
| **333950** | CREATIVE STEPS LEARNING CENTERS, INC. |

Resident agent name and mailing address of the registered office

MARILYN E MEISSNER
7045 CEDARBANK DR
WEST BLOOMFIELD MI 48324

FILED
APR 15 2010
by Department
Bureau of Commercial Services

RECEIVED
MAR 10 2010
DLEG $25.00

**For Bureau use only**
**Fee Received**

- ☒ $25 before May 16
- ☐ $35 (May 16 - 31)
- ☐ $45 (June 1 - 30)
- ☐ $55 (July 1 - 31)
- ☐ $65 (Aug 1 - 31)
- ☐ $75 after August 31

The address of the registered office
7045 CEDARBANK DR
WEST BLOOMFIELD MI 48324

☒ To certify there are no changes from your previous filing check this box and proceed to Item 6. If the resident agent and/or registered office has changed complete items 1-6. If only officer and director information has changed complete items 4-6.

1. Mailing address of registered office in Michigan (may be a P.O. Box)   | 2. Resident Agent

3. The address of the registered office in Michigan (a P.O. Box may not be designated as the address of the registered office)

4. Describe the general nature and kind of business in which the corporation is engaged:

| 5. | NAME | BUSINESS OR RESIDENCE ADDRESS |
|---|---|---|
| | President (Required) | |
| If different than President | Secretary (Required) | |
| | Treasurer (Required) | |
| | Vice - President | |
| If different than Officers | Director | |
| | Director | |
| | Director | |

6. Signature of authorized officer or agent   *Marilyn E Meissner*   Title *President/Owner*   Date *3-8-10*   Phone (Optional) *248-892-2888*

## Filing fee $25
## Report due May 15, 2010.

If received after May 15, penalty fees will be assessed.

Please make your check or money order payable to the State of Michigan.

Return to :   Department of Energy, Labor & Economic Growth
Bureau of Commercial Services, Corporation Division
P.O. Box 30481
Lansing, MI 48909
(517) 241-6470

If more space is needed additional pages may be included. Do not staple any items to report. This report is required by Section 911, Act 284, Public Acts of 1972, as amended.

# EXHIBIT 6

1068348.1

BCS/CD-541 (Rev. 7/09)

| MICHIGAN DEPARTMENT OF ENERGY, LABOR & ECONOMIC GROWTH BUREAU OF COMMERCIAL SERVICES | |
|---|---|
| Date Received | (FOR BUREAU USE ONLY) |
| | This document is effective on the date filed, unless a subsequent effective date within 90 days after received date is stated in the document. |

Name
*Cedarbank Investments, Inc*

Address
*7045 Cedarbank Drive*

| City | State | Zip Code |
|---|---|---|
| *West Bloomfield* | *MI* | *48324* |

EXPIRATION DATE:
DECEMBER 31,

Document will be returned to the name and address you enter above.
If left blank document will be mailed to the registered office.

## CERTIFICATE OF ASSUMED NAME
### For use by Corporations, Limited Partnerships and Limited Liability Companies
(Please read information and instructions on reverse side)

Pursuant to the provisions of Act 284, Public Acts of 1972 (profit corporations), Act 162, Public Acts of 1982 (nonprofit corporations), Act 213, Public Acts of 1982 (limited partnerships), or Act 23, Public Acts of 1993 (limited liability companies), the corporation, limited partnership, or limited liability company in item one executes the following Certificate:

1. The name of the corporation, limited partnership, or limited liability company is:

*Cedarbank Investments, Inc*

2. The identification number assigned by the Bureau is:

*27-2799769*

3. The assumed name under which business is to be transacted is:

*English Oaks Montessori Christian Academy*

4. This document is hereby signed as required by the Act.

COMPLETE ITEM 5 ON LAST PAGE IF THIS NAME IS ASSUMED BY MORE THAN ONE ENTITY.

Signed this *28th* day of *June*, *2010*

By *Marilyn Beoler Meissner*
(Signature)

*Marilyn Meissner*          *President*
(Type or Print Name)          (Type or Print Title or Capacity)

(Limited Partnership Only - Indicate Name of General Partner if the General Partner is a corporation or other entity)

# Michigan Department of Energy, Labor & Economic Growth

## Filing Endorsement

This is to Certify that the **CERTIFICATE OF ASSUMED NAME**

for

**CEDARBANK INVESTMENTS, INC**

**ID NUMBER: 03324T**

to transact business under the assumed name of

**ENGLISH OAKS CHRISTIAN MONTESSORI, INC.**

received by facsimile transmission on June 9, 2010 is hereby endorsed

Filed on June 9, 2010 by the Administrator.

The document is effective on the date filed, unless a subsequent effective date within 90 days after received date is stated in the document.

Expiration Date: December 31, 2015



In testimony whereof, I have hereunto set my hand and affixed the Seal of the Department, in the City of Lansing, this 9TH day of June, 2010.

*Director*

Bureau of Commercial Services

# Michigan Department of Labor & Economic Growth

## Filing Endorsement

This is to Certify that the **CERTIFICATE OF ASSUMED NAME**

for

**CREATIVE STEPS LEARNING CENTERS, INC.**

**ID NUMBER: 333950**

to transact business under the assumed name of

**ENGLISH OAKS MONTESSORI AND SCHOOL OF PROTOCOL**

received by facsimile transmission on June 27, 2005 is hereby endorsed filed on June 28, 2005 by the Administrator. The document is effective on the date filed, unless a subsequent effective date within 90 days after received date is stated in the document.

**Expiration Date: December 31, 2010**

*In testimony whereof, I have hereunto set my hand and affixed the Seal of the Department, in the City of Lansing, this 28th day of June, 2005.*

*, Director*

*Bureau of Commercial Services*

Sent by Facsimile Transmission 06179

# EXHIBIT 7

1068348.1



# English Oaks Montessori Christian Academy
"American Blended" Montessori Curriculum

 

Home

Early Childhood

Why Montessori?

A Star Studded Night

About Us

Contact Us

Site Map



# OPEN HOUSE
# FRIDAY MARCH 18th 2011
# 6-7:30 PM

# CLASS OBSERVATION
# AVAILABLE BY APPOINTMENT
# 9:30-11 am

Welcome to English Oaks Montessori Christian Academy. We are delighted to open our doors in the community and would like to take this opportunity to introduce you to our fine "American blended Montessori!"" philosophy and program. We are pleased to offer the first School of Protocol for the young child, surrounded by our wonderful academic program, special teachers, caring and warm environment. We are unique in the fact that we believe not only educating a child is important, but teaching special techniques of social grace, virtues and good moral character are the cornerstones to a good and proper life. When developed early, we know these characteristics are continued as life skills, which give the child the most optimum foundation for success.

Children are innately preparing to be adults. Our goal as parents and teachers is to raise children with strong foundation skills, education, work habits and social graces that will one day enable them to be responsible for themselves, their own homes, families, employment and communities. Children who learn early in life to believe in their own abilities, and to take pride in their independence and self-discipline will be well equipped for life long success.

We, as teachers and role models, take our task seriously and take pride in the program we present to every child in our School. We invite you to join us on this momentous journey with your child.

## "American Blended"
## Montessori Curriculum

Social Graces
Language Arts
Math



Social Studies
Science
Geography
Sensorial
Practical Life
Foreign Language
Fine Arts
Dance/Movement
School of Protocol
Spiritual Growth

**English Oaks offers.....**

Infants
Toddlers
Preschool
Kindergarten

Full Day Class
AM Class
PM Class
Extended Care

Summer Program
School Age Care

# Hours: 7 am – 6 pm
# Year Round

# CONTINUOUS ENROLLMENT

Please call for a tour.
We look forward to meeting you and your child.

**English Oaks Montessori**
**CHRISTIAN ACADEMY**

(248) 363-8100 phone
(248) 363-8893 fax

891 Union Lake Road
White Lake, Michigan 48386



*(one mile north of Cooley Lake Road)*

EnglishOaksMontessori@comcast.net

All rights reserved



# English Oaks Montessori Christian Academy
"American Blended" Montessori Curriculum



Home

Early Childhood

Why Montessori?

A Star Studded Night

About Us
  Welcome Letter

Contact Us

Site Map

## ABOUT US

We are proud to present a curriculum that is rich in academics, while also providing your child with the social graces needed in everyday life. English Oaks classrooms have been designed to exceed the needs of the young child with promoting the Montessori philosophy and blending in American culture.

## HISTORY

English Oaks Montessori has been located in White Lake Michigan since 2005 and has been in the area since 1995. English Oaks is owned by Marilyn Meissner who holds certification in Montessori credentials. Marilyn has lived in the area over 37 years and has herself provided family and early childhood education for over 35 years.

## FAMILY TESTIMONIALS

"From the moment God brought us to EOMCA's doorstep, it has been such a beautiful journey for our family. Your vision for EOMCA was truly evident in the wonderful teachers & staff you've brought to the school, the good-hearted families you've attracted & retained and especially the programs you have inspired and shared with the children. You have taught me so very much about the love of learning."
- Parent Alumni Class of 2010

"My Child just loves it here. She can't wait for school the next day. She has learned so much already and is having such a fun day."
- Parent of child currently attending EOMCA

"English Oaks is not a day care facility it's part of our extended family. It's so nice to have such a safe and nuturing place for our daughter to attend after school."
-Parent Alumni Class of 2007

All rights reserved

# EXHIBIT 8

1068348.1



**Department of Human Services**

michigan.gov

## Statewide Detail Child Day Care Centers and Homes

See Online Reports

| Facility Information |
|---|
| **Name:**   ENGLISH OAKS MONTESSORI AND SCHOOL OF PROTOCOL |
| **Address:**   891 UNION LAKE ROAD    WHITE LAKE, MI 48386 |
| **County:** |
| **Phone:**   (248)363-8100      **License Status:**   ACTIVE |

| Licensee Information |
|---|
| **Name:**   CREATIVE STEPS LEARNING CENTERS INC. |
| **Address:**   7045 CEDARBANK DR WEST BLOOMFIELD MI 48324 |
| **Phone:**   Same as Facility |

### License Information

| Number | Facility Type | Capacity | Effective Date | Expiration Date | Period of Operation |
|---|---|---|---|---|---|
| DC630278421 | Centers | 39 | 2/28/2010 | 2/28/2012 | Year Round |

### Days Open

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| NOT OPEN | DAY ONLY | DAY ONLY | DAY ONLY | DAY ONLY | DAY ONLY | NOT OPEN |

### Services Offered

**Full Day Program:** YES

**Provides:** PRESCHOOL - INFANT/TODDLER - BEFORE/AFTER SCHOOL - DROP IN -

### Reports Available

The reports on this site are available for downloading or viewing using the Adobe Acrobat Reader.

When rule violations have been cited in a report, the licensee is required to submit a corrective action plan. Written corrective action plans that are submitted by the licensee in response to the Department reports are available through the Freedom of Information of Act.

Inspection Report

Renewal Licensing Study Report

Special Investigation Report # 2010D0432013

**Original and Renewal Licensing Study Report**
- Completed in response to the Initial or renewal application for license on Child Care Centers and Group Day Care Homes.

**Inspection Report**
- These reports include Interim, 90 Day, and 10% Sample Inspections.

  - Interim Inspections are conducted for Centers and Group Homes at or near the mid point of the effective dates of the license.
  - 90 Day Inspections are completed within 90 days of the issuance date of Family Day Care Home certificate of registration.
  - 10% Sample Inspections are conducted on a random 10% sample of Family Day Care Homes in each county each year.





STATE OF MICHIGAN
## DEPARTMENT OF HUMAN SERVICES
BUREAU OF CHILDREN AND ADULT LICENSING



JENNIFER M. GRANHOLM
GOVERNOR

ISMAEL AHMED
DIRECTOR

April 23, 2010

Marilyn Meisner
Creative Steps Learning Centers Inc.
7045 Cedarbank Dr
West Bloomfield, MI 48324

RE: Lic./Reg. #:  DC630278421
Investigation #:  2010D0432013
English Oaks Montessori and School of Protocol

Dear Ms. Meisner:

Attached is the Special Investigation Report for the above referenced facility. Due to the violations identified in the report, a written corrective action plan is required. The corrective action plan is due 15 days from the date of this letter and must include the following:

- How compliance with each rule will be achieved.
- Who is directly responsible for implementing the corrective action for each violation.
- Specific time frames for each violation as to when the correction will be completed or implemented.
- How continuing compliance will be maintained once compliance is achieved.
- The signature of the responsible party and a date.

If you desire technical assistance in addressing these issues, please feel free to contact me. In any event, the corrective action plan is due within 15 days. Failure to submit an acceptable corrective action plan will result in disciplinary action.

Please review the enclosed documentation for accuracy and feel free to contact me with any questions. In the event that I am not available and you need to speak to someone immediately, please feel free to contact the local office at (248) 975-5053.

Sincerely,



Cheryl V. Amare, Licensing Consultant
Bureau of Children and Adult Licensing
Suite 1000
28 N. Saginaw
Pontiac, MI 48342
(248) 975-5081

enclosure

**MICHIGAN DEPARTMENT OF HUMAN SERVICES**
**BUREAU OF CHILDREN AND ADULT LICENSING**
**SPECIAL INVESTIGATION REPORT**

## I. IDENTIFYING INFORMATION

| | |
|---|---|
| **License #:** | DC630278421 |
| **Investigation #:** | 2010D0432013 |
| **Complaint Receipt Date:** | 03/30/2010 |
| **Investigation Initiation Date:** | 04/01/2010 |
| **Report Due Date:** | 05/29/2010 |
| **Licensee Name:** | Creative Steps Learning Centers Inc. |
| **Licensee Address:** | 7045 Cedarbank Dr<br>West Bloomfield, MI 48324 |
| **Licensee Telephone #:** | |
| **Administrator:** | Marilyn Meisner, Designee |
| **Licensee Designee:** | Marilyn Meisner, Designee |
| **Name of Facility:** | English Oaks Montessori and School of Protocol |
| **Facility Address:** | 891 Union Lake Road<br>White Lake, MI 48386 |
| **Facility Telephone #:** | (248) 363-8100 |
| **Original Issuance Date:** | 09/02/2005 |
| **License Status:** | REGULAR |
| **Effective Date:** | 02/28/2010 |
| **Expiration Date:** | 02/28/2012 |
| **Capacity:** | 39 |
| **Program Type:** | CHILD CARE CENTER |

1

## II. ALLEGATION(S)

Center is not posting or notifying parents of communicable diseases. There have been two cases of pneumonia in the last month.

## III. METHODOLOGY

| 03/30/2010 | Special Investigation Intake 2010D0432013 |
|---|---|
| 04/01/2010 | Special Investigation Initiated - On Site |
| 04/20/2010 | Contact - Telephone call made spoke with program director, Simone Culley. |
| 04/22/2010 | Contact - Face to Face spoke with program director. |
| 04/22/2010 | Contact - Telephone call received spoke with licensee, Marilyn Meissner. |
| 04/22/2010 | Exit Conference |
| 04/23/2010 | Inspection Completed-BCAL Sub. Compliance |
| 04/23/2010 | Corrective Action Plan Requested and Due on 05/08/2010 |

**ALLEGATION:**

**Center is not posting or notifying parents of communicable diseases. There have been two cases of pneumonia in the last month.**

**INVESTIGATION:**

On April 1, 2010 I made an on-site inspection at this child care center. Immediately upon my arrival, the program director, Simone Culley phoned licensee, Marilyn Meissner. I spoke with Ms. Meissner via telephone. I informed Ms. Meissner about the complaint allegation. Ms. Meissner stated to her knowledge there have been no cases of pneumonia at the center. Ms. Meissner claimed they have and do notify parents when they become aware of any child in care contracting a communicable disease.

I spoke with program director, Simone Culley regarding the complaint allegation. Ms. Culley stated she was not aware of any cases of pneumonia at the center. Ms.

2

Culley indicated when she becomes aware of any child in care contracting a communicable disease the center notifies parents.

I spoke with Staff Member 1 regarding this complaint allegation. Staff Member 1 stated she was not aware of any children having pneumonia. I requested to speak with Staff Member 2. Ms. Culley informed me that Staff Member 2 was not currently on-site and would not be back until after spring break. I asked Ms. Culley to have Staff Member 2 call me when she returned to work.

I reviewed the children's attendance records for the month of March 2010. There was only one child, Child A (male, 5-years-old) that had been absent for an extended period of time. Ms. Culley showed me documentation of the reason for Child A's absence which was not related to this complaint allegation. Two other children, Child B (male, 3-years-old) and Child C (female, 4-years-old) were absent for a week. Ms. Culley provided explanations for Child B and Child C's absences.

| APPLICABLE RULE | |
|---|---|
| R 400.5113c | **Child illness.** |
| | (4) If the center becomes aware that a child in care has contracted a communicable disease, then the center shall notify parents of the following:<br>    (a) The name of the communicable disease.<br>    (b) The child may have been exposed.<br>    (c) The symptoms of the disease. |
| **ANALYSIS:** | The center is not aware of any child having pneumonia. The licensee, Marilyn Meissner and program director, Simone Culley claim they notify parents when they become aware of any child in care contracting a communicable disease. |
| **CONCLUSION:** | VIOLATION NOT ESTABLISHED |

3

**ADDITIONAL FINDINGS:**

**INVESTIGATION:**

On April 1, 2010 I requested to speak with Staff Member 2 regarding the complaint allegation.

On April 20, 2010 I called and spoke with program director, Simone Culley and again requested to speak with Staff Member 2. Ms. Culley stated that licensee; Marilyn Meissner was supposed to call me to discuss this issue.

During my on-site inspection on April 22, 2010, Ms. Culley stated Staff Member 2 had already gone home for the day. Ms. Culley phoned Ms. Meissner and I spoke with her. I requested to review the file for Staff Member 2. Ms. Meissner refused to allow me to review this file. Ms. Meissner stated I had already spoken with three staff members and I did not need to speak with Staff Member 2 or any other staff. I reminded Ms. Meissner of Public Act 116 and the Licensing Rules for Child Care Centers requiring the licensee to cooperate and provide the department access to all records, materials, and staff. Ms. Meissner again refused to allow me to review Staff Member 2's file.

| APPLICABLE RULE | |
|---|---|
| R 400.5102 | **Licensee.** |
| | (7) The licensee shall cooperate with the department in connection with an inspection or investigation. Cooperation shall include both of the following:<br>    (a) The licensee shall provide access to all records, materials, and staff. |
| **ANALYSIS:** | Ms. Meissner refused continued cooperation with department to complete this investigation. |
| **CONCLUSION:** | VIOLATION ESTABLISHED |

4

## IV. RECOMMENDATION

Upon receipt of an acceptable corrective action plan, I recommend the center continues with the current license status.

Cheryl V. Amare
Licensing Consultant

Date
04/23/2010

Approved By:

Joseph A. Jerome
Area Manager

Date 4/26/2010

5





JENNIFER M. GRANHOLM
GOVERNOR

ISMAEL AHMED
DIRECTOR

March 25, 2010

Marilyn Meisner
Creative Steps Learning Centers Inc.
7045 Cedarbank Dr
West Bloomfield, MI 48324

RE: License #: DC630278421
English Oaks Montessori and School of Protocol
891 Union Lake Road
White Lake, MI 48386

Dear Ms. Meisner:

Your Child Care Center license is renewed. It is valid only at your present address and is nontransferable. If you move, please notify us at least 30 days in advance.

Attached is the Licensing Study Report for the above referenced facility. The study has determined substantial compliance with applicable licensing statutes and administrative rules. Therefore, your regular license is renewed.

In order to assess and improve the quality of the licensing process, the Bureau of Child and Adult Licensing would appreciate your feedback. Please go to our website, www.michigan.gov/michildcare and click on **Licensing Inspection Questionnaire** under "Contact Us" to complete a brief survey.

Please feel free to contact me with any questions. In the event that I am not available and you need to speak to someone immediately, please feel free to contact the local office at (248) 975-5053.

Sincerely,



Cheryl V. Amare, Licensing Consultant
Bureau of Children and Adult Licensing
28 N. Saginaw, Suite 1000
Pontiac, MI 48342
(248) 975-5081

enclosure

**MICHIGAN DEPARTMENT OF HUMAN SERVICES**
**BUREAU OF CHILDREN AND ADULT LICENSING**
**RENEWAL INSPECTION REPORT**

## I. IDENTIFYING INFORMATION

| | |
|---|---|
| **License #:** | DC630278421 |
| **Licensee Name:** | Creative Steps Learning Centers Inc. |
| **Licensee Address:** | 7045 Cedarbank Dr<br>West Bloomfield, MI 48324 |
| **Licensee Telephone #:** | |
| **Administrator/Licensee Designee:** | Marilyn Meisner, Designee |
| **Name of Facility:** | English Oaks Montessori and School of Protocol |
| **Facility Address:** | 891 Union Lake Road<br>White Lake, MI 48386 |
| **Facility Telephone #:** | (248) 363-8100 |
| **Original Issuance Date:** | 09/02/2005 |
| **Capacity:** | 39 |
| **Age Range:** | Ages Birth Thru 6 years |
| **Program Components:** | DROP IN<br>PRESCHOOL<br>INFANT/TODDLER<br>BEFORE/AFTER SCHOOL |

1

## II. METHODS OF INSPECTION

Date of On-site Inspection(s):            02/18/2010

Date of Environmental/Health Inspection:      02/17/2010

Date of Fire Safety Inspection

|  |  | No. of Records Reviewed |
|---|---|---|
| No. of children enrolled in care | 25 | 10 |
| No. of staff employed | 7 | 5 |
| No. of volunteers | 0 | 0 |
| No. of children present at time of inspection | 20 | |
| No. of staff present at time of inspection | 6 | |
| No. of volunteers present at time of inspection | 0 | |
| No. of children interviewed/observed | 20 | |

| Persons Interviewed: | Licensee/Licensee Designee | ☒ |
|---|---|---|
| | Program Director | ☒ |
| | Care giving staff | ☒ |

Approved Child Use Space: Infant/toddler room and preschool room

Approved Program Director: Simone Culley

Approved Variances - Yes. If yes, Explain
R400.5103(4) Program director qualifications; responsiblities - Simone Culley is in the process of completing a child care administration course. Approval for a six month variance with licensee, Marilyn Meissner handling the administrative responsiblities.

R400.5204(5)(c) Bedding and sleeping equipment for infants/toddlers; seating for staff. Center has approval to use uniform light weight blankets.

## DESCRIPTION OF FINDINGS & CONCLUSIONS

The facility is in compliance with all applicable rules and statutes

2

## III. RECOMMENDATION

I recommend issuance of a regular license to this child care center.


Cheryl V. Amare
Licensing Consultant

Date
03/25/2010

# EXHIBIT 9

J068348.1

Approved, SCAO

Original - Court    2nd copy - Defendant
1st copy - Officer    3rd copy - Plaintiff

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>6th    JUDICIAL CIRCUIT | REQUEST AND ORDER TO<br>SEIZE PROPERTY | CASE NO.<br>2008-093170-CK |
|---|---|---|

Court address

1200 N. Telegraph Rd., Pontiac, MI 48341      Court telephone no.

(248) 858-1000

| Plaintiff name(s) and address(es)<br><br>BELFOR USA GROUP, INC.<br>c/o Hyman Lippitt, P.C.<br>322 N. Old Woodward Ave.<br>Birmingham, MI 48009 | v | Defendant name(s) and address(es)<br><br>CREATIVE STEPS LEARNING CENTERS, INC.<br>d/b/a ENGLISH OAKS MONTESSORI AND<br>SCHOOL OF PROTOCOL<br>819 Union Lake Rd., White Lake, MI 48386 |
|---|---|---|

### REQUEST AND VERIFICATION

1. On 03/18/2010 a judgment was granted in this case upon which the following is now due:
   Date

Amount of judgment $ 142,800.00    Interest to this date $ 13,681.20    Postjudgment costs $ _____
Total $ 156,481.20    Less credits received $ 1,850.00    *Balance due to date $ 154,631.20

*Additional statutory interest, officer/sheriff fees, and expenses may be charged in addition to the unpaid balance according to law.

2. The plaintiff requests the court issue an order to seize the property of the following defendant(s):

Creative Steps Learning Centers, Inc. d/b/a    d/b/a English Oaks Montessori and School of Protocol
Name    Date of birth (if available)

Marilyn Meissner, Resident Agent,    7045 Cedarbank Dr., West Bloomfield, MI 48324
Name    Date of birth (if available)

02/03/2011    P38459
Date    Plaintiff/Attorney signature    Bar no.

322 N. Old Woodward Ave.    Birmingham    MI    48009    (248) 646-8292
Address    City    State    Zip    Telephone no.

### ORDER

**TO ANY SHERIFF, DEPUTY SHERIFF, OR COURT OFFICER - YOU ARE ORDERED TO:**

1. Seize and sell, according to law, any of the personal property (as determined by the officer) of defendant(s) named above in the **Request and Verification** that is not exempt from seizure, as will be sufficient to satisfy the plaintiff's demand, costs, and any statutory fees and expenses. Personal property may include, but is not limited to motor vehicles or money, wherever located.
2. If sufficient personal property of defendant(s) cannot be found within your jurisdiction, seize and sell any of the real property of defendant(s) not exempt from seizure, as will be sufficient to satisfy plaintiff's demand, costs, and any statutory fees and expenses.
3. Collect from the sale of the property enough money to pay all of your statutory fees and statutory expenses.
4. Deposit proceeds of sale with the ☐ court ☐ plaintiff after deducting statutory fees and statutory expenses.
☐ 5. Claim and Delivery Only: Seize the property described in the attached judgment for claim and delivery and deliver to the plaintiff(s); or if the property is not found in the possession of the defendant(s), levy the value of it.
6. You must endorse the month, day, year, and hour that you receive this order, and that time is the effective date of this order. You must return this order not less than 20 days, nor more than 90 days, from the effective date. If you have begun to serve this order on or before the return date, you may complete the service and return after the return date.
7. You may not continue collecting on this order after the return date except as indicated in item 6.

MAR 0 2 2011
Date    JUDGE DENISE LANGFORD MORRIS
   Judge    Bar no.

Order to be served by: _____
   Court officer/Deputy sheriff

A TRUE COPY
BILL BULLARD JR.
Oakland County Clerk / Register of Deeds
By _____
Deputy

ENDORSEMENT: I certify that I received this order on _____ at _____
   Date    Time

_____
Court officer/Deputy sheriff

**TO THE DEFENDANT:** The person seizing property is required to provide you with a receipt of all money paid and an inventory of the property seized.

11-53376 SM Filed 07/20/11 Entered 07/20/11 16:24:18 Page 52 of 58

# EXHIBIT 10

1068348.1

**STATE OF MICHIGAN**
**IN THE 6TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

BELFOR USA GROUP, INC.

              Plaintiff/Counter-Defendant,        Case No. 08-093170-CK
                                           Hon. D. Langford Morris

vs.

CREATIVE STEPS LEARNING CENTERS, INC.
d/b/a ENGLISH OAKS MONTESSORI AND SCHOOL OF PROTOCOL,

              Defendant/Counter-Plaintiff.

_____/

HYMAN LIPPITT, P.C.
By: DOUGLAS A. HYMAN (P-27695)
Attorneys for Plaintiff/Counter-Defendant
322 North Old Woodward Avenue
Birmingham, Michigan 48009
(248) 646-8292

DANIEL D. AMBROSE (P53053)
AMBROSE LAW GROUP
Attorneys for Defendant/Counter-Plaintiff
1007 E. West Maple Rd.
Walled Lake, MI 48390
(248) 624-5500

_____/

## AFFIDAVIT OF MICHAEL J. GAZZARATO

STATE OF MICHIGAN    )
                        ) SS
COUNTY OF OAKLAND)

      Michael J. Gazzarato, being first duly sworn, deposes and makes this

Affidavit with personal knowledge of the facts contained herein, and if called

upon as a witness, he can testify as follows:

1.      I am a Court Officer employed by Rancilio & Associates which is located

at 36809 Groesbeck Highway, Clinton Township, MI 48035.

2.      On March 23, 2011, at 9:30 a.m., Court Officer Al D'Angelo and I arrived

at Creative Steps Learning Center at 891 Union Lake Rd., White Lake, Michigan.

(00166690)

3. We arrived with a Request and Order to Seize Property dated March 02, 2011, which authorized us to seize the property of Creative Steps Learning Centers, Inc. d/b/a English Oaks Montessori and School of Protocol, to satisfy a judgment dated 3/18/2010 for a total of $156,481.20.

4. When we attempted to enter the building, a woman named Simone Culley came to the locked door but refused to grant us entry. She stated that she had spoken with Ms. Meissner and had been instructed not to let any Court Officers into the building. She also stated that she had to honor her boss's request.

5. She refused to open the door and called Ms. Meissner from a cordless phone near the front door.

6. A few minutes later, Ms. Meissner arrived and claimed that she had just spoken with the Chief of Police, who had instructed her to inform us that we would be arrested for trespassing if we entered the building because the legal name of the business had changed.

8. Ms. Meissner produced a number of documents that did not substantiate her claims and insisted that the Creative Learning Center had been dissolved and was under new ownership.

9. She could not produce a business license for the new Corporation. This license should have been posted in the building.

10. A few moments later a uniformed police officer arrived. Ms. Meissner told him that she had spoken with the Chief of Police and that we were not allowed in.

11. I spoke with the officer and informed him that we were executing a Court Order and could not be denied access to the building. We were there to perform

our due diligence and ascertain which items of value were present and seize that property unless it was owned by another entity.

12.　　The officer contacted his sergeant who arrived a short time later. The sergeant attempted to convince Ms. Meissner to allow us into the building, but she still refused, citing what the Chief told her.

13.　　The sergeant called the Chief, who arrived on the scene a short time later. D'Angelo and I were still not allowed to enter the premises, and we waited as the police officers attempted to make sense of what Ms. Meissner was saying about the business name being changed.

14.　　I informed the officers that according to the State of Michigan website, Creative Steps Learning Centers, Inc. was not dissolved, and that Ms. Meissner was in fact the Resident Agent of the business, which contradicted her unsubstantiated claims that the name had been changed.

15.　　The Chief attempted to convince Ms. Meissner to allow us into the building so we could do our job. She refused, shut the door, and locked it. She refused to open the door despite the Chief's repeated requests to do so.

16.　　Throughout the time I was on the scene, I observed Ms. Meissner making several telephone calls. She claimed to be talking to her lawyer and other parties that could prove the Judgment was not enforceable.

17.　　Ms. Meissner also telephoned individuals to request that they come over to the center and remove their property before it was seized.

18.　　She threatened to call the news and was creating a scene inside the school.

19.     The Chief informed me that because many young children were present inside the building, he would not allow the seizure to take place. He stated that the Circuit Court Judge issuing the order could contact him with any questions.

20.     The Chief suggested that I have a warrant issued for her arrest; I told him that I did not have the authority to issue warrants.

21.     The Chief informed Ms. Meissner that she could be held in contempt of court for non-compliance. Ms. Meissner replied that she "did not care" and we were "not getting into the building."

22.     I left the scene more than two hours after arrival without executing the order.

23.     Because I witnessed this event, I can personally attest to paragraphs 12 through 18 of the Plaintiff Belfor's Verified Ex Parte Motion and Brief for Issueance of Order that Defendants' Principal, Marilyn Meissner, Show Cause Why she Should Not be Held in contempt of Court and for Issuance of a Preliminary Injunction.

Further affiant sayeth not.

Dated: March 31, 2011

Michael J. Gazzarato
Operations Manager
Court Officer
Rancilio & Associates
36809 Groesbeck Highway
Clinton Township MI. 48035
Office Phone (586)-792-3810
Fax Number (586)-792-3724
Wireless Phone (586)-940-0874
mgazzarato@rancoassociates.com

Subscribed and sworn to before me this
March 31, 2011

_____

Notary Public