**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

Marilyn Fessler,                                    Case No. 11-53376
                                                    Chapter 13
                                                    Honorable Steven W. Rhodes

       Debtor.

_____/

**OBJECTION TO BELFOR USA GROUP, INC'S MOTION TO DISMISS**
**DEBTOR'S BANKRUPTCY CASE PURSUANT TO 11 U.S.C. §1307**

Debtor Marilyn Fessler, through her counsel, Charles J. Taunt & Associates, PLLC, files this Objection to Belfor USA Group, Inc.'s Motion to Dismiss Debtor's Bankruptcy Case Pursuant to 11 U.S.C. §1307. Given the format of Belfor's Motion as a combined motion and brief, a paragraph by paragraph response is not practicable. Ms. Fessler denies that her bankruptcy petition is filed in bad faith and requests that this Court deny Belfor's Motion for the following reasons:

1.      Ms. Fessler is not and has never been a party to any proceeding filed by Belfor in the state court. Belfor requests this Court determine, without due process, that she is not only liable for a judgment she has never had the opportunity to defend, but also that such judgment is non-dischargeable.

2.      This bankruptcy is not a two-party dispute. Ms. Fessler has multiple creditors for whom she can and intends to use the bankruptcy process to reorganize.

3.      Belfor's claim against Ms. Fessler is disputed both factually and legally and should not be determined through the basis of a motion for dismissal.

1

WHEREFORE for the reasons set forth herein and as described in the Brief in Support of Objection filed concurrently herewith, Marilyn Fessler requests this Court deny Belfor's Motion to Dismiss Debtor's Bankruptcy Case Pursuant to 11 U.S.C. §1307 and award Ms. Fessler with costs in having to defend said Motion.

CHARLES J. TAUNT & ASSOCIATES, PLLC

/s/ Erika D. Hart
Attorney for Debtor
700 East Maple Road, Second Floor
Birmingham, MI 48009
(248) 644-7800
ehart@tauntlaw.com
(P67457)

Dated: August 10, 2011

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

Marilyn Fessler,                                    Case No. 11-53376
                                                     Chapter 13
                                                     Honorable Steven W. Rhodes
                    Debtor.

_____/

## BRIEF IN SUPPORT OBJECTION TO BELFOR USA GROUP, INC'S MOTION TO DISMISS DEBTOR'S BANKRUPTCY CASE PURSUANT TO 11 U.S.C. §1307

Belfor's Motion to Dismiss Debtor's Bankruptcy Case Pursuant to 11 U.S.C. §1307 ("Motion to Dismiss") is an attempt to circumvent the bankruptcy process and to deny Ms. Fessler her right to both the automatic stay and to her day in Court. The Motion to Dismiss is a continuation of the improper and vicious attacks against Ms. Fessler which began in the state court, despite the fact that Belfor has initiated no litigation against her, no judgment has been entered against her and Ms. Fessler has never had a contract with Belfor.

Ms. Fessler is entitled to relief under the Bankruptcy Code. She has multiple debts which can benefit from resolution in the bankruptcy process. There is no judgment against her, let alone a determination by any court that can allow the Bankruptcy Court to decide without due process that a debt is non-dischargeable, a debt to which she was never a party and disputes both factually and legally.

### *Factual Background*

In 2007, there was a flood in the day care center operated by Creative Steps Learning Centers, Inc. ("Creative Steps"). Belfor USA Group, Inc. ("Beflor") was hired by Creative Steps to repair the damage and, to this day, the repairs remain

3

unfinished. The entire contents of the day care were damaged. Those items which were not destroyed by the water were so damaged and covered in mold that they could not be used in the day care again for safety reasons. Creative Steps leased new equipment (educational, toys, tables, etc) from Ms. Fessler's daughter, Elizabeth Fessler (Smith), in order to continue operations. See Affidavit of Ms. Fessler attached as **Exhibit A** and Lease with Elizabeth Fessler (Smith), attached as **Exhibit B**.

Belfor sued *Creative Steps only* in Oakland County Circuit Court in 2008 and, through a series of improper tactics and other court errors, obtained a judgment *against Creative Steps only* in March 2010. The underlying amount at issue was $43,601.08 and Belfor, on an oral motion for damages, obtained a judgment against *Creative Steps only* for treble damages for conversion in the amount of $142,800.00 (the "Creative Steps Judgment"). The request for treble damages was never even plead in the Complaint. See Complaint attached as **Exhibit C.** Ms. Fessler was never a party to this suit and strongly contests that Belfor is entitled to any compensation, from Creative Steps, but also from herself.

Belfor makes strong claims against Ms. Fessler in its Motion to Dismiss, but this does not provide the entire picture or a real explanation of why Ms. Fessler *must have* an opportunity to defend the claims against her. In reality, Belfor not only did a terrible job in repairing and failed to complete repair of the flood damage, but it is Ms. Fessler's position that Belfor charged for services that were never rendered to Creative Steps, including supplies that were never used (charging for vinyl dry wall but using regular dry wall) and cleaning which was

done by the Creative Steps staff, and not by Belfor.  See Affidavit attached as **Exhibit A.**

In addition, Belfor makes much of Ms. Fessler's 341 testimony (for which no transcript is attached) regarding alleged misuse of insurance proceeds, when the contract with Creative Steps itself allowed for payment to other contractors for their repair work from such proceeds.  See Affidavit attached as **Exhibit A**.

Belfor waited a year to enforce its judgment.  During that time, in order to survive in a struggling economy, Ms. Fessler had to change the structure of her business model and Cedarbank Investments ("Cedarbank") was born in June 2010, at the end of the prior school year.  Cedarbank is a different company and a different program from Creative Steps – Cedarbank is a Christian focused Montessori academy that also offers teacher training, advertising partnership, and senior aid.  Creative Steps was not a Christian based curriculum and did not offer teacher training and senior aid.  Contracts were executed between Cedarbank and parents, a lease was drafted for use of the equipment from Ms. Smith, and Cedarbank executed a lease for use of the building (the prior lease between Creative Steps and M&E Holdings, LLC had expired).  Cedarbank is a complete separate and different entity which uses nothing of Creative Steps and has a different ownership structure from Creative Steps.  See Affidavit of Ms. Fessler, attached as **Exhibit A**.

Like most childcare facilities, Cedarbank's operations are locked down during the day to protect children from strangers.  Upon the arrival of court officers to enforce the Creative Steps Judgment, Ms. Fessler correctly informed

them that there was no property inside owned by Creative Steps and directed the officer to the damaged equipment remaining in the outbuilding on the property. Ms. Fessler offered that they could return when children were no longer present, but that she could not allow them into the premises. Further, she informed them that the operations were not that of Creative Steps, but that of Cedarbank. See Affidavit of Ms. Fessler, attached as **Exhibit A**. Cedarbank also has its own licensing, contrary to Belfor's claims in its Motion. See licensing for Cedarbank, attached as **Exhibit D**.

Instead of asking for a creditor's examination or seeking permission from the Oakland County Court to enter the premises via motion, Belfor filed a motion to hold Ms. Fessler and Cedarbank in contempt and in the context of a post-judgment motion in a case to which Ms. Fessler and Cedarbank were not parties, ***to have the entire judgment against Creative Steps entered against Ms. Fessler and Cedarbank as well.***

Belfor's own state court counsel indicated the vindictiveness of their efforts in stating that Belfor would follow Ms. Fessler until the end of the earth.

With other liabilities to deal with, including an unknown deficiency to PNC Bank on a personal guaranty (likely in excess of $100,000, but unknown at this time), Ms. Fessler filed for Chapter 13 bankruptcy. Belfor attempts to attack Ms. Fessler's choice of venue, when this is exactly what the bankruptcy process allows.

Now Belfor continues its outrageous efforts to truncate Ms. Fessler's legal rights, by asking this Court to determine, without due process, that Belfor's claims

against Ms. Fessler are non-dischargeable without trial and claims that therefore the Chapter 13 is of no use.

*Legal Arguments*

**A.    The Debtor has filed her petition in good faith and Belfor has the burden to prove otherwise.**

"In the context of section 1307(c), the burden of showing the debtor's lack of good faith is borne by the party seeking dismissal. See Love 957 F.2d at 1355." Alt v. United States (In re Alt), 305 F.3d 413, 420 (6th Cir. Mich. 2002) Belfor miscites In re Newsome, 92 B.R. 941 (Bankr. M.D. Fla. 1988) in stating that the burden of proving good faith somehow rests upon Ms. Fessler.

Belfor has failed to carry its burden of proof.   The Debtor has other creditors and obligations other than Belfor.   See attached Affidavit, **Exhibit A**, and Schedules on file with the Court (Docket No. 11).   While the timing of her petition is certainly related to the motion filed by Belfor, part of Ms. Fessler's decision to file bankruptcy was that the likely deficiency to PNC Bank on her personal guaranty would be resolved as well.   See attached Affidavit, **Exhibit A**. Simply filing a bankruptcy on the eve of a motion or court action is not sufficient for a showing of bad faith, or many bankruptcies would be dismissed simply on this basis.

**1.    At a minimum, any debt to Belfor has yet to be adjudicated.**

Ms. Fessler was not a party to Belfor's state court action against Creative Steps and is not a party to the Creative Steps Judgment.   Belfor's attempt to circumvent the judicial process to ask the Court to hold, under what appears to be

a *res judicata* basis, that Ms. Fessler is also liable on the Creative Steps Judgment is improper.

Belfor is asking this Court to determine that (1) Ms. Fessler's actions were contempt of a prior Court order, (2) as a consequence, Ms. Fessler should be responsible for the entire Creative Steps Judgment, and (3) that such liability is non-dischargeable, rendering her Chapter 13 useless. Belfor asks all of this, without ever having named Ms. Fessler in a single court action.

Belfor's citation of [In re Penning, 22 B.R. 616, 619 (Bankr. E.D. Mich. 1982)](#) is not on point. In *Penning,* the debtor was actually named as a defendant and had the opportunity to fully and fairly litigate whether conversion occurred. Here, Ms. Fessler has never been named as a party to any dispute and has never had the opportunity to litigate whether there was a conversion, let alone whether she is liable for same. Belfor asks this Court to make the giant legal and factual leap in holding that because an individual was found liable for conversion in *Penning*, therefore Ms. Fessler must be liable as well.

At a minimum, Ms. Fessler is entitled to an opportunity to respond to the allegations against her and not to be bound by a judgment in a case in which she was not a party. The law demands this opportunity and *res judicata does not apply in this case.*

> Whether an action is barred by res judicata principles is determined by the application of four factors:
> 1. A final decision on the merits in the first action by a court of competent jurisdiction;
> 2. ***The second action involves the same parties, or their privies, as the first;***
> 3. The second action raises an issue actually litigated or which should have been litigated in the first action;

4. An identity of the cause of action.

*Ohio Truck & Trailer, Inc. v. Level Propane Gases, Inc. (In re Level Propane Gases, Inc.), 422 B.R. 93, 101 (B.A.P. 6th Cir. 2010)*(emphasis added), citing Century Indemnity Co. v. Special Metals Corp. (In re Special Metals Corp.), 317 B.R. 326, 331 (Bankr. E.D. Ky. 2004) (citing Sanders Confectionary Prods., Inc. v. Heller Fin., Inc., 973 F.2d 474, 480 (6th Cir. 1992)).

The Oakland County Circuit Court action was filed against Creative Steps and Ms. Fessler was not a party. She cannot be held liable for a judgment to which she was not a party, without due process. A motion for dismissal of her Chapter 13 bankruptcy is hardly due process on a judgment in excess of $140,000, to which she has never had a chance to personally respond.

"In analyzing the parties' respective burdens and the totality of the circumstances, it is important to dismiss for 'bad faith' only in narrow circumstances so as to avoid '. . . a risk of judicial usurpation of the legislative power to determine the scope of and eligibility for bankruptcy relief in general or under a particular chapter.' *Hamm v. Manfredi (In re Manfredi), 434 B.R. 356, 359 (Bankr. M.D.Pa. 2010), citing In re Jensen, 369, B.R. 210, 233 (Bankr.E.D.Pa.2007)*.

The burden is on Belfor to show that the case should be dismissed under §1307. Belfor cannot meet this burden and dismissal for bad faith under these circumstances is not warranted. Ms. Fessler has simply tried to operate her business to meet her obligations to the families she cares for and the family of her own, no more. When the economy demanded, Ms. Fessler recognized that the old model of Creative Steps was not functional and changed her business model with a partner and different services.

Belfor continues its attacks against Ms. Fessler in the belief that she or her ex-husband Richard Fessler, have some funds which Belfor can leverage them into paying if Belfor drives hard enough. This is absolutely not the case. Ms. Fessler has no savings which are not leveraged to a secured creditor, she has no retirement funds, receives no alimony or support from her ex (they were divorced decades ago), no income from any other source. Her schedules are a true reflection of her dire need for this bankruptcy process.

### 2. This case is <u>not</u> a two party dispute.

Ms. Fessler is a personal guarantor on an obligation to PNC Bank, secured by a mortgage against real property owned by her single purpose entity, M&E Holdings, LLC (the building from which Cedarbank operates). See attached Affidavit of Ms. Fessler, Exhibit A. See also attached forbearance agreement with PNC Bank, attached as **Exhibit E**. Given the current economy, Ms. Fessler is uncertain of the value of the underlying real property, but understands from local comparisons it could be worth half or less than owed, leaving a deficiency in excess of $100,000.

This case simply is not a two party dispute and Ms. Fessler is entitled to use the bankruptcy process to restructure her obligations. Further, it is entirely disingenuous for Belfor to claim no knowledge of the liabilities to PNC Bank. PNC Bank intervened in the lawsuit against Creative Steps because of PNC's mortgage on the real property which Belfor sought to foreclose a construction lien. See PNC's Motion for Intervention, attached as **Exhibit F**.

**B.     Belfor does not have a valid claim against the Debtor.**

Belfor's basic assumption in its Motion is that it is a creditor of the Debtor who has been treated unfairly.  But Belfor is not even a creditor of Ms. Fessler.  In fact, any obligations to Belfor are clearly marked as "disputed" on Schedule F (Docket No. 11, page 11).  Ms. Fessler continues to be attacked by Belfor for a contractual obligation of Creative Steps *to which she is not a party* and for collection of a judgment *to which she is not a party*.

In addition, the Creative Steps Judgment makes no factual findings whatsoever, stating that summary disposition had been previously entered "on all counts".  See Creative Steps Judgment, attached as **Exhibit G** and the prior Order for Summary Disposition, attached as **Exhibit H**.   As indicated above and described in **Exhibit H**, the Creative Steps Judgment was entered due to attorney error, as the attorney representing Creative Steps failed to file affirmative defenses, unknown to Ms. Fessler.

Ms. Fessler strongly contests that any obligation is owed to Belfor, by Creative Steps or herself.  As described in detail in the Affidavit attached as **Exhibit A**, Ms. Fessler contends that Belfor was overpaid for its services and that Ms. Fessler's challenges to Belfor's improper billing is the cause of Belfor's vindictive and unrelenting actions.   As there was no trial in the case against Creative Steps, judgment was entered truly on attorney error (failure to file affirmative defenses), and absolute <u>no factual findings</u> were made by the State Court, these issues have never been brought to light.  In consideration that there

are ample defenses to Belfor's claims, both factually and legally, Ms. Fessler must be afforded the opportunity to defend these claims.

While the finding against Creative Steps has been reduced to judgment, Ms. Fessler is allowed the opportunity to litigate this dispute before a judgment in excess of $140,000 is simply "deemed" applicable against a woman who struggles to make ends meet for herself and her grandchildren, whom she has adopted as her own rather than seen lost to a foster home. This is truly the case of the honest but unfortunate debtor.

Belfor should not be allowed to have this Chapter 13 case dismissed based solely on its hopes for an allowed claim against Ms. Fessler.

CHARLES J. TAUNT & ASSOCIATES, PLLC

/s/ Erika D. Hart
Attorney for Debtor
700 East Maple Road, Second Floor
Birmingham, MI 48009
(248) 644-7800
ehart@tauntlaw.com
(P67457)

Dated: August 10, 2011

EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

Marilyn Fessler,                                            Case No. 11-53376
                                                            Chapter 13
                                                            Honorable Steven W. Rhodes

        Debtor.
_____/

**AFFIDAVIT OF MARILYN FESSLER IN SUPPORT OF HER**
**OBJECTION TO BELFOR'S MOTION TO DISMISS**
**PURSUANT TO 11 U.S.C. §1307**

Marilyn Fessler, being sworn states:

1.     I make this affidavit on personal knowledge.

2.     If sworn as a witness, I can competently testify as to the fact stated herein.

3.     In 2007, there was a flood in the day care center operated by Creative Steps Learning Centers, Inc. ("Creative Steps").

4.     Belfor USA Group, Inc. ("Beflor") was hired by Creative Steps to repair the damage and, to this day, the repairs remain unfinished.

5.     The entire contents of the day care were damaged by the flood. Those items which were not destroyed by the water were so damaged and covered in mold that they could not be used in the day care again for safety reasons.

6.     Creative Steps leased new equipment (educational, toys, tables, etc) from my daughter, Elizabeth Smith, in order to continue operations. **Exhibit B** to the Objection is a true and accurate copy of the 2007 lease between Creative Steps and Elizabeth Smith.

7. Other than the pending motion to dismiss my Chapter 13 case and the motion for contempt which was pending in Oakland County Circuit Court, I have never been named as a party to any lawsuit filed by Belfor.

8. Although I understand that Belfor obtained a judgment against Creative Steps in Oakland County Circuit Court, I believe that Belfor is not entitled to any funds or judgment against Creative Steps, myself or anyone else regarding repairing the property at issue. I believe that Belfor overcharged for the services it provided and I personally have never had the opportunity to challenge Belfor on its claims. I would like the chance to defend the claims against me.

9. Specifically, the contract between Belfor and Creative Steps allowed direct payment of contractors other than Belfor from the insurance proceeds. A copy of the Work Authorization is attached as **Exhibit I.** The requirement to transfer all rights in the insurance policy proceeds was removed from the Work Authorization and initialed by both parties. **Exhibit I.**

10. Belfor did not complete its obligations under the Work Authorization. Belfor did not repair the second floor of the building, where most of the damage was and as they were required to. In addition, Belfor's billing to the adjuster included the second floor, which they did not complete. I believe they charged for items which were not installed.

11. Nine (9) months after work on repairing the property began, Creative Steps received a bill from Belfor with details in dollar amounts. After review, it was clear to me (and an inspector) that the bill included charges for items which were not installed. For example, $12,000 was charged for vinyl dry wall, when

normal dry wall was installed at a cost of $900. Belfor charged $7,000 for "cleaning" which was done by Creative Steps staff. Beflor charged over $12,000 for an architect for a staircase to the second floor, which was never installed.

12.     According to the audit of Belfor's bill, Creative Steps paid over $106,000 to Belfor, which was an overpayment by at least $64,000. I believe I should have an opportunity to raise these issues (and more) in response to the claims against me.

13.     In 2010, I decided to change the structure of my child care facility. I wanted to proceed with a Christian based Montessori program and also to offer additional services like teacher training and senior aid. The 2010 school year ended in May 2010 and therefore I organized Cedarbank Investments ("Cedarbank") in June 2010 in order to start this new endeavor. Cedarbank is a different company and a different program from Creative Steps, its a Christian focused Montessori academy that also offers the teacher training and senior aid mentioned above.

14.     Beginning in June 2010, contracts were executed between Cedarbank and parents, a lease was drafted for use of the equipment from Ms. Smith, and Cedarbank executed a lease for use of the building (the prior lease between Creative Steps and M&E Holdings, LLC had expired in 2010 as well).

15.     Cedarbank is a complete separate and different entity which uses nothing of Creative Steps and has a different ownership structure from Creative Steps.

16.     Like most childcare facilities, Cedarbank's operations are locked down during the day to protect children from strangers.  Upon the arrival of court officers to enforce the Creative Steps judgment, I correctly informed them that there was no property inside owned by Creative Steps (as all property was being leased from my daughter) and directed the officer to the damaged equipment remaining in the outbuilding on the property.  The damaged equipment consists mostly of moldy toys and damaged educational items, but this is all that is left of Creative Steps.

17.     I informed the court officers that they could return when children were no longer present, but that not only did they not have a basis for entry onto the premises, but that I could not allow them into the premises.  I informed them that the operations were not that of Creative Steps, but that of Cedarbank.

18.     Cedarbank also has its own licensing separate from Creative Steps and Cedarbank had to go through a separate process with the State of Michigan to obtain this licensing.

19.     I have other liabilities other than Belfor's alleged claim, including a potential liability to PNC Bank relating to a deficiency on the promissory note and mortgage on the real property where Cedarbank operates.  This liability may be in excess of $100,000, but I listed the debt as "unknown" because I don't the know the value of the real estate.

20.     I believe that Belfor is attacking me personally in an effort to silence me regarding Belfor's improper billing practices, as I have reported these issues to

the Attorney General, the Office of Licensing, the Insurance Commissioner, and several television networks.

21.    I make less than $2,000 per month and I am struggling to keep my finances in order. I am trying to support my family, which includes grandchildren whom I have adopted so I would not lose them to foster care.

22.    I filed my bankruptcy in good faith, that I could use this process in order to finally obtain some relief and an opportunity to reorganize my debts through Chapter 13.

<u>/s/Marilyn Fessler</u>
Marilyn Fessler

Dated: August 10, 2011

Subscribed and sworn to before me this
___day of August 2011

_____,
Notary Public, State of Michigan,
County of _____, acting in the
County of _____, My Commission
Expires: _____

EXHIBIT B

# LEASE AGREEMENT

WHEREAS, English Oaks Montessori School has been damaged by its faulty sprinkler system, and

WHEREAS, English Oaks Montessori School has not yet received any disbursement of funds from its insurance company for the damage, and

WHEREAS, English Oaks Montessori School does not have the means to replace the interior equipment and furniture that was destroyed in the aforementioned incident,

Elizabeth Fessler and English Oaks Montessori School agree as follows:

Elizabeth Fessler will supply the equipment and furniture necessary to allow English Oaks Montessori School to open for business prior to its scheduled opening date of . A listing of the supplied equipment and furniture must be attached to this agreement at the time of execution and signed by both parties.

English Oaks Montessori School of Protocol accepts the lease of this equipment and furniture with full knowledge that the equipment and furniture are previously used.

English Oaks Montessori School agrees to lease the supplied equipment for a 5-year term from Elizabeth Fessler for a payment of $5,000 to be paid in full prior to the termination of this lease agreement in 5 years.

At the termination of this lease agreement, absent a further agreement or extension, all equipment and furniture listed in this agreement will be returned to Elizabeth Fessler.

_Marilyn Meissner_, _President_
on behalf of English Oaks
Montessori School of Protocol

_March 15, 2007_
Date

_Elizabeth Fessler_
Elizabeth Fessler

_3-15-07_
Date

Signed before me on the 15th day of March, 2007 by Marilyn Meissner and Elizabeth Fessler

_Ceree Alane Burkart_ Notary

Ceree Alane Burkart
Notary Public of Michigan
Oakland County
Expires 02/13/2014
Acting in the County of _Oakland_

EXHIBIT C

**STATE OF MICHIGAN**
**IN THE 6TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

BELFOR USA GROUP, INC.

        Plaintiff,

vs.

ENGLISH OAKS MONTESSORI AND SCHOOL OF PROTOCOL

        Defendant.

Case No  OAKLAND COUNTY  08-093170-CK
Hon.

JUDGE D. LANGFORD MORRIS
BELFOR USA GR  v  ENGLISH OAKS

_____/

HYMAN LIPPITT, P.C.
By: DOUGLAS A. HYMAN (P-27695)
Attorneys for Plaintiff
322 North Old Woodward Avenue
Birmingham, Michigan 48009
(248) 646-8292

BY: DEPUTY COUNTY CLERK
2008 JUL 21 PM 3: 23
RECEIVED FOR FILING
OAKLAND COUNTY CLERK

_____

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court.

## BELFOR USA GROUP, INC.'S COMPLAINT

    Plaintiff BELFOR USA GROUP, INC. ("Belfor") by and through its attorneys,

Hyman Lippitt, P.C., and for its Complaint against English Oaks Montessori and School

of Protocol English Oaks ("English Oaks") states as follows:

## COUNT I – BREACH OF CONTRACT

    1.    Defendant, English Oaks conducts business at 819 Union Lake Road,

White Lake, Michigan, Oakland County.

2.     On or about February 21, 2007, Belfor and English Oaks entered into a written agreement, a copy of which is attached hereto and incorporated herein by reference (**Exhibit A**).

3.     Under this contract, Belfor agreed to perform certain repairs to a building owned by Defendant in consideration for which Defendant agreed to pay for said repairs.

4.     Belfor fully performed its obligations to Defendant under the terms and conditions of the Agreement.     As shown by the attached statement of account Defendant owes Forty Three Thousand Six Hundred One and 08/100 Dollars ($43,601.08) to Belfor.

5.     Although often requested to do so, Defendant has failed, refused and neglected to remit said amount to Belfor.

6.     Upon information and belief, Defendant's insurance company has already paid Defendant for all of the work performed by Belfor as well as for additional amounts of monies which were originally quoted by Belfor but either not done by Belfor at Defendant's request or performed by another contractor at Defendant's request. Contrary to and in breach of the Agreement, Defendant has failed and refused to turn over and endorse and tender all insurance drafts as produced to Belfor.

7.     Under the Agreement, Defendant was contractually required to "immediately endorse and tender all drafts as produced to the Contractor."

8.     Accordingly, based on the foregoing, Defendant had no right, title, or property interest of any kind in the insurance proceeds associated with the work performed by Belfor.

9.    Based on the foregoing, Defendant: (I) breached the terms of the Agreement; and (II) wrongfully converted the insurance proceeds designated for work performed by Belfor.

10.    When Defendant received the insurance proceeds, they simply endorsed the check to themselves instead of delivering it to Belfor as they were required to do under the Agreement.

11.    Despite repeated requests from Belfor, Defendant has refused to tender the insurance proceeds and has otherwise deprived Belfor of its property.

12.    There is now due and owing to Belfor by Defendant the amount of Forty Three Thousand Six Hundred One and 08/100 Dollars ($43,601.08) as is more fully set forth in Belfor's Statement of Account a copy of which are attached hereto and incorporated herein by reference, (**Exhibit B**) plus pre-suit interest at the rate of five (5%) percent per annum plus costs, interest and attorney fees most wrongfully sustained.

## COUNT II - IMPLIED CONTRACT

13.    Plaintiff Belfor re-alleges and reaffirms Paragraphs 1 through 12 of its Complaint as though more fully set forth herein.

14.    An implied contract exists where one engages or accepts beneficial services of another for which compensation is customarily made and naturally anticipated.

15.    Belfor performed beneficial services that were accepted by Defendant.

16.    *Belfor is entitled to compensation for said services under an implied contract* in the amount of Forty Three Thousand Six Hundred One and 08/100 Dollars ($43,601.08) together with costs, interests and attorney fees.

WHEREFORE, Belfor respectfully requests this Honorable Court to enter a judgment in its favor against Defendant in the amount of Forty Three Thousand Six Hundred One and 08/100 ($43,601.08) plus costs, interest and attorneys fees most wrongfully sustained.

## COUNT III – UNJUST ENRICHMENT

17.    Plaintiff Belfor re-alleges and reaffirms Paragraphs 1 through 16 of its Complaint as though more fully set forth herein.

18.    Defendant has enjoyed the beneficial use of Belfor's services and materials provided without just compensation to Belfor.

19.    Defendant has been unjustly enriched at Belfor's expense.

20.    Belfor is entitled to recover in quantum merit from Defendant in the amount of Forty Three Thousand Six Hundred One and 08/100 Dollars ($43,601.08) plus costs, interest and attorney fees most wrongfully sustained.

WHEREFORE, Belfor respectfully requests this Honorable Court to enter a judgment in favor of Belfor and against Defendant in the amount of Forty Three Thousand Six Hundred One and 08/100 Dollars ($43,601.08) plus costs, interest and attorney fees most wrongfully sustained.

## COUNT IV – CONVERSION

21.    Plaintiff Belfor restates and re-alleges Paragraphs 1 through 20 as if more fully set forth here.

22.    Belfor holds both a contractual interest and a property interest in all "insurance proceeds" affiliated with the current project.    Under the terms of the

Agreement, Defendant agreed to immediately endorse and tender all drafts as produced to Contractor.

23. GAB Robbins was the insurer for the project. Consequently, any insurance proceeds from GAB Robbins pertaining to work performed by Belfor on this project belong to Belfor.

24. Without Plaintiff Belfor's consent, Defendant wrongfully obtained the insurance proceeds from GAB Robbins in the amount of Forty Three Thousand Six Hundred One and 08/100 Dollars ($43,601.08) without endorsing them and tendering them over to Belfor.

25. Under the terms of the Agreement, Plaintiff Belfor was to be the recipient of all insurance drafts related to their work.

26. At no time did Belfor agree to Defendant retaining the funds that were to be used to pay Belfor for its work.

27. Defendant wrongfully exerted its own domain over the insurance proceeds check by endorsing the check to themselves instead of endorsing and tendering to Belfor as required by the Agreement.

28. Under the explicit terms of the Agreement, Defendant was obligated to endorse and tender all insurance drafts to Belfor.

29. Despite repeated demands from Belfor, Defendant has refused to return the insurance proceeds to Belfor.

30. Defendants' actions as outlined above were intentional because they were done with the specific purpose to deprive Belfor of its ownership interest in the insurance proceeds.

31.    As a direct and proximate result of Defendants' actions outlined above, Plaintiff Belfor has been damaged in an amount of at least the amount of the insurance proceeds wrongfully withheld from them of Forty Three Thousand Six Hundred One and 08/100 Dollars ($43,601.08) plus interest, costs and attorney fees.

WHEREFORE, Belfor respectfully requests that this Honorable Court enter a judgment against Defendants in the amount of Forty Three Thousand Six Hundred One and 08/100 Dollars ($43,601.08) plus interest, costs and attorney fees most wrongfully sustained.

## COUNT V – LIEN FORECLOSURE

32.    Plaintiff Belfor restates and re-alleges Paragraphs 1 through 31 as if more fully set forth here.

33.    The real property which is the subject matter of this Complaint is legally described in (**Exhibit C**) to this Complaint and is located in Oakland County, Michigan.

34.    Creative Steps Learning Center Incorporated, a Michigan corporation, through its d/b/a English Oaks Montessori and School of Protocol is upon information and belief the owner of the above described real property.

35.    Belfor supplied Defendant with materials and related services for an improvement to the property pursuant to the agreed upon work authorization which is attached as (**Exhibit A**).

36.    Belfor has made numerous and repeated attempts to obtain payment from Defendant for materials and related services provided pursuant to the work authorization.

37.    Defendant has failed and refused to pay amounts due and owing to Belfor.

38.     Belfor has complied with all requirements of the Michigan Construction Lien Act, MCL 570.1101, et. seq.

39.     The first day of work pursuant to the authorization was February 21, 2007, and the last day of work was January 28, 2008.

40.     The Claim of Lien was filed and recorded with the Oakland County Register of Deeds on April 22, 2008 (**Exhibit C**).

41.     As of the date of filing this Complaint the amount of Forty Three Thousand Six Hundred One and 08/100 Dollars ($43,601.08) plus interest, costs and attorney fees as due and owing pursuant to the work authorization.

WHEREFORE, Belfor respectfully requests this Honorable Court to:

A.      That this Court determine that Plaintiff's Construction Lien is valid in the amount of Forty Three Thousand Six Hundred One and 08/100 Dollars ($43,601.08) plus costs and recoverable amounts discovered by Belfor after the date the lien was recorded, plus interest, costs, and reasonable attorney fees as authorized by the Michigan Construction Lien Act, MCL 570.1101, et. seq.

B.      If Plaintiff's Construction Liens are not paid in full, Belfor requests an Order of Foreclosure and Sale of the Property in accordance with the Michigan Construction Lien Act and the proceeds of such sale be applied to payment of Belfor's Construction Liens together with interest, costs and reasonable attorney fees pursuant to MCL 570.1118(2).

C.    Grant such other and further relief as this Court may deem just and

equitable.

Respectfully submitted,

HYMAN LIPPITT, P.C.

By:    _____
DOUGLAS A. HYMAN (P27695)
Attorneys for Plaintiff Belfor USA
322 N. Old Woodward Ave.
Birmingham, MI  48009
(248) 646-8292

Dated:  July 21, 2008

*Exh A*

# BELFOR {●}

**PROPERTY RESTORATION**

## WORK AUTHORIZATION

License # 2132160913

The undersigned (insured), **English Oaks Montessori School** of

| **891   Union Lake** | **White Lake** | **MI** | |
|---|---|---|---|
| Address | City | State | Zip |

represents that he/she/they are owners of/or agent for the hereinafter specified property (and/or its contents) and hereby authorize and direct Belfor USA Group, Inc. ("Contractor") to provide all labor, equipment and materials required to properly repair the specified real property, contents or structure commonly known as:

| **891   Union Lake** | **White Lake** | **MI** | **48386** |
|---|---|---|---|
| Address | City | State | Zip |

It is understood and agreed that Contractor will perform all repair work in a good and workmanlike manner in accordance with our General Conditions, will have a policy of insurance in full force, will comply with local safety standards and will perform all work according to local building codes. A one-year workmanship warranty will be presented upon full payment for the work performed. The undersigned hereby transfers, assigns and conveys to Contractor his/her/their right, title and interest in and to the insurance policy proceeds and all drafts for work performed or to be performed by Contractor. Accordingly, undersigned authorizes and directs their insurer (named below) to make "Belfor USA" a payee on all insurance drafts for all insurance work performed by Contractor on the above damaged property. The undersigned also agrees to immediately endorse and tender all drafts as produced to the Contractor.

All insurance work performed by the Contractor is subject to the terms of the insured policy of insurance which sets the scope and price of the work based upon industry standards. All uninsured code-upgrade work, depreciation and insurance deductibles are the responsibility of the undersigned or Owner. The undersigned has the right to cancel this Work Authorization prior to the midnight of the 3rd business day of signing this agreement by writing and delivering a written cancellation request to Contractor by such time. The undersigned also agrees to and understands the General Conditions stated below.

*The parties agree to have the 1st Floor Completed by March 6, 2007. ME ML*

Date: _____

| $   **N/A** | **2, 21, 07** | X _____ |
|---|---|---|
| AMOUNT (IF KNOWN) | DATE | INSURED-OWNER-AUTHORIZED REPRESENTATIVE |

**David McBride** _____

BELFOR REPRESENTATIVE

INSURED-OWNER-AUTHORIZED REPRESENTATIVE

_____        _____
INSURANCE COMPANY                               POLICY NUMBER

## General Conditions

Owner agrees to allow timely inspections by municipal inspectors and/or mortgage company agents and to assist with obtaining any third party payee signatures on all insurance drafts so that Belfor can be timely paid. If for any reason your claim is denied by your insurance carrier or they refuse to pay the costs of any and or all insurance work performed by Contractor, or you otherwise delay or prevent the payment of said insurance draft or use it for other purposes, then the insured/owner(s) of the above mentioned property will be personally liable for all costs of services performed. The Contractor and undersigned acknowledge and agree that the Contractor shall have no liability for, and shall be indemnified and held harmless from and against all claims, damages, liabilities and costs arising out of or relating to the presence, discovery, or failure to discover, remove, remove, address, remediate or cleanup environmental or biological hazards including, but not limited to mold, fungus, hazardous waste, substances or materials, or asbestos unless covered by the insured's policy of insurance, remediation is part of the scope of work and such work is directed by an industrial hygienists protocol and clearance testing. If for any reason the amount due under this Work Authorization is not paid when due, the Contractor shall be entitled to its expenses and attorneys fees incurred in the collection of this agreement with interest on the unpaid balance at the rate of 1.5% per month or the rate prescribed by law. The undersigned permits Contractor to obtain a personal credit report to ensure that the insurance proceeds for this project are not in jeopardy. Any controversy or claim arising out of or relating to this agreement, or breach thereof, may be submitted to a court of competent jurisdiction. The Contractor and undersigned are in good standing with the Better Business Bureau. Contractor reserves their right to terminate this contract should the client breach any of its terms, conditions or the assurance of payment.

REV. 9/04

**BELFOR USA** ...

**HEADQUARTERS** ...

... • www.belforusa.com

**BELFOR (●)**
PROPERTY RESTORATION

*** INVOICE 1810-7-13763-5F ***

**April 17, 2008**

English Oaks School                                   RE:   English Oaks School
891 Union Lake Rd                                             891 Union Lake Road
White Lake, MI                                                White Lake, MI 48386
Attn:   Marilyn Meissner
Phone:  248-363-8100
Fax:    248-363-8893

**WATER DAMAGE**

| | | |
|---|---|---:|
| Content Manipulation | $ | 559.00 |
| Temp Services per Agreed Estimate | $ | 26,507.22 |
| Addendum for Cleaning - Rear lower section (Preschool) | $ | 3,041.11 |
| Addendum for Extra Work Performed | $ | 3,094.94 |
| Final Repairs Completed per Agreed Estimate | $ | 117,046.40 |

**TOTAL INVOICE AMOUNT:  $   150,248.67**
**LESS PAYMENTS RECEIVED:  $  (106,647.59)**
**TOTAL AMOUNT DUE:  $    43,601.08**

*****PLEASE INCLUDE BELFOR USA AS A PAYEE ON THE INSURANCE DRAFT FOR PAYMENT OF THE ABOVE REFERENCED INVOICE AMOUNT *****

Please Remit Payment to:
    BELFOR USA
    1342 N Main St
    Ann Arbor, MI 48104

Thank you,
Dave McBride

LIBER**40239** PG**890**



84656
LIBER 40239 PAGE 890
$13.00 MISC RECORDING
$4.00 REMONUMENTATION
04/22/2008 03:02:28 P.M. RECEIPT# 36479

PAID    RECORDED - OAKLAND COUNTY
RUTH JOHNSON, CLERK/REGISTER OF DEEDS



RECEIVED
APR 22 2008
Ruth John...  ...of Deeds
Oakland County, MI

## CLAIM OF LIEN

Notice is hereby given that on February 21, 2007, Belfor USA Group, Inc., a Colorado corporation, of 185 Oakland Avenue, Suite 300, Birmingham, Michigan 48009-3433, first provided labor or material for an improvement to that certain real property commonly known as 891 Union Lake Road, White Lake Road  48386, as more particularly described on the attached Exhibit A, the owner of which property is English Oaks Montessori School.  The last day of providing the labor or material was January 28, 2008.

The lien claimant's contract amount, including extras, is Forty-Three Thousand Six Hundred One and 08/100 ($43,601.08) Dollars.  The lien claimant has received no payments thereon and therefore claims a construction lien upon the above-described real property in the amount of Forty-Three Thousand Six Hundred One and 08/100 ($43,601.08) Dollars.

Dated:  **4/22**     , 2008

**LIEN CLAIMANT**

**Belfor USA Group, Inc.,**
a Colorado corporation

By: _____
Denise E. Latin
Authorized Representative
185 Oakland Avenue, Suite 300
Birmingham, MI 48009-3433

STATE OF MICHIGAN   )
_Oakland_ COUNTY       )

The foregoing instrument was acknowledged before me this 22nd day of April, 2008 by Denise E. Latin on behalf of Belfor USA Group, Inc.

_R L Stanley_
Notary Public, State of Michigan
County of _Macomb_
My commission expires: _1/30/2014_
Acting in the County of _Oakland_

> R. L. STANLEY
> Notary Public, State of Michigan
> County of Macomb
> My Commission Expires Jan. 30, 2014
> Acting in the County of _Oakland_

**Drafted by and when recorded return to:**
Douglas A. Hyman, Esq.
322 N. Old Woodward Avenue
Birmingham, Michigan  48009
248.646.8292

O.K. - LG

## EXHIBIT A

### LEGAL DESCRIPTION

Real estate situated in the Township of White Lake, Oakland County, State of Michigan, described as:

T3N R8E Sec 36 part of West path of NW quarter beginning on East line thereof South 02-00-00 E 784.74 feet from North Section line thence South 02-00-00 East 215.8 feet then North 44-15-00 W 294.36 feet then North 88-00-00 East 202 feet to the beginning .50 AY546

Commonly known as 891 Union Lake Road, White Lake, Michigan 48386.
Tax Parcel Identification Number: Y12-36-102-002

EXHIBIT D



Department of Human Services

## Statewide Detail Child Day Care Centers and Homes

See Online Reports

| Facility Information |
| --- |

**Name:** ENGLISH OAKS MONTESSORI CHRISTIAN ACADEMY
**Address:** 891 UNION LAKE ROAD    WHITE LAKE, MI 48386
**County:**
**Phone:** (248)363-8100      **License Status:** ACTIVE

| Licensee Information |
| --- |

**Name:** CEDARBANK INVESTMENTS, INC.
**Address:** 7045 CEDARBANK DR WEST BLOOMFIELD, MI 48324
**Phone:** Same as Facility

| License Information | | | | | | |
| --- | --- | --- | --- | --- | --- |
| **Number** | **Facility Type** | **Capacity** | **Effective Date** | **Expiration Date** | **Period of Operation** |
| DC630278421 | Centers | 39 | 2/28/2010 | 2/28/2012 | Year Round |

| Days Open | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| **Sunday** | **Monday** | **Tuesday** | **Wednesday** | **Thursday** | **Friday** | **Saturday** |
| NOT OPEN | DAY ONLY | DAY ONLY | DAY ONLY | DAY ONLY | DAY ONLY | NOT OPEN |

| Services Offered |
| --- |

**Full Day Program:** YES

**Provides:** PRESCHOOL - INFANT/TODDLER - BEFORE/AFTER SCHOOL - DROP IN -

| Reports Available |
| --- |

The reports on this site are available for downloading or viewing using the Adobe Acrobat Reader.

When rule violations have been cited in a report, the licensee is required to submit a corrective action plan. Written corrective action plans that are submitted by the licensee in response to the Department reports are available through the Freedom of Information of Act.

⚒ Inspection Report

⚒ Renewal Licensing Study Report

⚒ Special Investigation Report # 2010D0432013

## Original and Renewal Licensing Study Report
- Completed in response to the initial or renewal application for license on Child Care Centers and Group Day Care Homes.

## Inspection Report
- These reports include Interim, 90 Day, and 10% Sample Inspections.

  - Interim Inspections are conducted for Centers and Group Homes at or near the mid point of the effective dates of the license.
  - 90 Day Inspections are completed within 90 days of the issuance date of Family Day Care Home certificate of registration.
  - 10% Sample Inspections are conducted on a random 10% sample of Family Day Care Homes in each county each year.

**Special Investigation Report**

- Special Investigation Reports are conducted in response to rule related complaints received regarding a facility. **The presence of a special investigation report on this site does mean there were substantiated rule violations. Please read any report in its entirety.**

| CDC Home | Return to Search | New Search |
|---|---|---|

Michigan.gov Home | DHS Home | State Web Sites
Privacy Policy | Link Policy | Accessibility Policy | Security Policy
Copyright © 2001-2007 State of Michigan

# EXHIBIT E

## SECOND FORBEARANCE AGREEMENT

National City Bank (f/k/a National City Bank of the Midwest) (the "Bank"), a national banking association, having offices at 755 West Big Beaver Road, Suite 1400, Troy, Michigan 48084, M & E Holdings LLC, a Michigan limited liability company ("Borrower"), whose address is 891 Union Lake Road, White Lake, Michigan, Creative Steps Learning Centers, Inc. ("Creative Steps"), a Michigan Corporation, whose address is 891 Union Lake Road, White Lake, Michigan, and Marilyn Meissner ("Meissner") (together, with Creative Steps, the "Guarantors"), whose address is 7045 Cedarbank, West Bloomfield, Michigan 48324, enter into this Second Forbearance Agreement (the "Agreement") effective as of November 13, 2008.

## DEFINITIONS

Unless otherwise specifically defined herein, all capitalized terms shall have the meanings attributed to such terms in the Loan Documents. For purposes of this Agreement, the following capitalized terms shall have the following meaning (such definitions to be equally applicable to the singular and plural forms thereof):

1. "Indebtedness" shall mean and include all monetary obligations and liabilities of whatsoever kind, nature and description, direct or contingent, due or to become due, and whether now existing or hereafter arising and howsoever evidenced or acquired, between the Obligors and the Bank, and includes, without limitation: (i) any future advances made by the Bank to any Obligor for any reason, including but not limited to those made for the purpose of protection or preservation of the Bank's rights and interests arising hereunder, including without limitation, advances for taxes, levies, assessments, insurance, and reasonable attorneys' fees; (ii) all actual, reasonable costs and expenses incurred by the Bank in the protection, enforcement or collection of any of the foregoing, including, without limitation, reasonable attorneys' fees; and, (iii) all payments to the Bank that are required to be rescinded or payments that must otherwise be restored or returned by the Bank upon the insolvency, bankruptcy, dissolution or liquidation of any Obligor, or upon or as a result of the appointment of or a receiver, intervener or conservator or trustee or similar officer for any Obligor.

2. "Loan Documents" means this Agreement, the Note, the Mortgage, the Guaranties, the Original Agreement and any other agreements executed in connection with the loan relationship between the Obligors and the Bank.

3. "Obligor" means any party liable for repayment of any Indebtedness owing to the Bank pursuant to this Agreement or the other Loan Documents.

4. The words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole, and not to any particular provision of this Agreement. Section, subsection and exhibit references contained in this Agreement are references of sections, subsections and exhibits in or to this Agreement unless otherwise specified.

## RECITALS

A.    The Note. The Borrower is indebted to National City pursuant to a Promissory Note dated February 27, 2006, in the principal sum of $343,000.00 (the "Note").

B.    The Mortgage. As security for the repayment of the Note and all other Indebtedness to National City, the Borrower executed a mortgage, dated as of February 27, 2006, encumbering real property commonly known as 891 Union Lake Road, White Lake, Michigan (the "Property"), recorded by the Oakland County Register of Deeds on September 11, 2006, in Liber 38092, Page 60.

C.    The Guaranties. Repayment of the Note and all other indebtedness was further secured by: (a) the Unconditional Guaranty of Creative Steps dated February 27, 2006; and (b) the Unconditional Guaranty of Creative Steps dated February 27, 2006.

D.    The Original Forbearance Agreement. The Obligors and the Bank executed a Forbearance Agreement dated effective as of November 13, 2006 (the "Original Agreement").

E.    Request for Forbearance. The Obligors have requested that the Bank further refrain from the exercise of its rights and remedies, and the Bank has agreed to do so upon the terms and conditions set forth in this Agreement.

F.    Obligors' Acknowledgments. The Obligors acknowledge and represent that: (i) the Indebtedness is due to the Bank without setoff, defense or counterclaims at law or in equity, of any kind or nature; nor have the Obligors assigned such rights; (ii) the Bank has fully performed all of its obligations under the Note and any other Loan Documents; (iii) the Bank has no obligation to forbear from enforcing its rights and remedies available upon default; (iv) any future loans or forbearance will be extended in the Bank's sole discretion; (v) the Bank has made no representations of any kind or nature that funding in any amount will continue, or that the Bank's forbearance will be extended beyond the date set forth in this Agreement; and, (vi) the actions taken by the Bank to date in furtherance of the Loan Documents have been reasonable and appropriate under the circumstances and within its rights thereunder.

Based on the foregoing paragraphs A through F (which are incorporated herein as agreements, representations, warranties and covenants of the respective parties, as the case may be), and notwithstanding anything to the contrary contained in the Loan Documents, the parties hereby amend the Loan Documents and agree as follows:

1.    Term. The Due Date of the Note shall be May 13, 2012 (the "Due Date").

2.    Amendment of Payment Terms. The Note shall be repaid as follows:

    2.1    Consecutive monthly installments of interest, only, beginning on November 13, 2008, and continuing on the same day of each successive month through April 13, 2009;

    2.2    Consecutive monthly installments of interest and late fees, only, beginning on May 13, 2009, and continuing on the same day of each successive month through July 13, 2009;

    2.3    Consecutive monthly installments of principal and interest in the amount of $2352.71, to be applied to accrued interest first, beginning on August 13, 2009 and continuing on the same day of each successive month through October 13, 2012; and

    2.4    A final installment on the Due Date in an amount equal to the then remaining principal and interest balance, together with all unpaid costs and attorneys' fees.

3.    Release of Claims. In consideration of the accommodations made in this Agreement, the Obligors release and discharge the Bank from any and all claims, harm, injury, and damage of any and every kind, known or unknown, legal or equitable, which they may have against the Bank from the date of their first contact with the Bank through the date upon which this Agreement is executed.

The Obligors confirm that they have reviewed the effect of this release with competent legal counsel of their choice, or have been afforded the opportunity to do so, prior to the execution of this Agreement and related documents, and acknowledge and agree that the Bank is relying upon this release in making these accommodations.

The Obligors further acknowledge and affirm that, as of the date of this Agreement, the Bank has made no representations or promises which are not contained in this Agreement, or in any other agreement between the parties.

2

**4.    Events of Default.** The Obligors, without notice or demand of any kind, shall be in default under this Agreement upon the occurrence of any of the following Events of Default:

4.1    **Nonpayment of Obligations.** Any amount due and owing on any Indebtedness to the Bank is not paid in accordance with the terms hereof or of any agreement governing such Indebtedness.

4.2    **Misrepresentation.** Any written warranty, representation, certificate or statement in this Agreement, the Loan Documents or any other agreement with the Bank or otherwise made by or for any Obligor shall be materially false when made or at any time, or if any financial data or any other information now or hereafter furnished to the Bank by or on behalf of any Obligor shall prove to be materially false, inaccurate or misleading in any material respect.

4.3    **Nonperformance.** Any material failure to perform or default in the performance of any covenant, condition or term contained in this Agreement, the Loan Documents, or in any other documents executed in conjunction herewith, all of which covenants, conditions and terms contained therein are hereby incorporated in this Agreement by express reference.

4.4    **Assignment for the Benefit of Creditors.** Any Obligor makes an assignment for the benefit of creditors, fails to pay, or admits in writing their inability to pay their debts as they mature; or if a trustee of any substantial part of the assets of any Obligor is applied for or appointed, and in the case of such trustee being appointed in a proceeding brought against such Obligor, the Obligor, by any action or failure to act indicates their approval of, consent to, or acquiescence in such appointment and such appointment is not vacated, stayed on appeal or otherwise shall not have ceased to continue in effect within thirty (30) days after the date of such appointment.

4.5    **Bankruptcy.** Any proceeding involving any Obligor is commenced by or against such Obligor under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law or statute of the federal government or any state government, and in the case of any such proceeding being instituted against such Obligor, (i) such Obligor, by any action or failure to act indicates their approval of, consent to or acquiescence therein, or (ii) an order shall be entered approving the petition in such proceedings and such order is not vacated, stayed on appeal or otherwise shall not have ceased to continue in effect within thirty (30) days after the entry thereof.

4.6    **Judgments.** The entry of any judgment, decree, levy, attachment, garnishment or other process, or the filing of any judgment lien against any Obligor, which is not fully covered by insurance, and such judgment or other process shall not have been, within thirty (30) days from the entry thereof, (i) bonded over to the satisfaction of the Bank and appealed, (ii) vacated, or (iii) discharged.

4.7    **Change in Control.** Any sale, conveyance, assignment or other transfer, directly or indirectly, of any ownership interest of any Obligor which is a business entity, which results in any change in the identity of the individuals or entities previously in Control of same, or the grant of a security interest in any ownership interest of any person or entity, directly or indirectly Controlling the Obligor, as applicable, which could result in a change in the identity of the individuals or entities previously in Control of the Obligor, as applicable.

4.8    **Collateral Impairment.** The entry of any judgment, decree, levy, attachment, garnishment or other process, or the filing of any lien against the Property securing the repayment of the Note or the performance of the Guaranties, and such judgment or other process shall not have been, within thirty (30) days from the entry thereof, (i) bonded over to the satisfaction of the Bank and appealed, (ii) vacated, or (iii) discharged, or the loss, theft, destruction, seizure or forfeiture, or the occurrence of any material deterioration or impairment of

3

the Property securing repayment of the Indebtedness or any material decline or depreciation in the value or market price thereof (whether actual or reasonably anticipated) which causes the Property securing the Indebtedness, in the sole opinion of the Bank acting in good faith, to become unsatisfactory as to value or character, or which causes the Bank to reasonably believe that it is insecure and that the likelihood for repayment of the Indebtedness is or will soon be impaired; time being of the essence. The cause of such deterioration, impairment, decline or depreciation shall include, but is not limited to, the failure by the Obligors to do any act deemed reasonably necessary by the Bank to preserve and maintain the value and collectability of the Property securing repayment of the Indebtedness.

4.9   **Death of Individual.** The death of any Obligor who is a natural person.

4.10   **Material Adverse Event.** The occurrence of any material adverse event which causes a change in the financial condition of any Obligor, or which would have a material adverse effect on the business of any Obligor which is a business entity.

4.11   **Material Adverse Financial Change.** The determination by the Bank that a material adverse change has occurred in the financial condition of any Obligor which is a business entity from the condition set forth in their most recent financial statement furnished to the Bank, or from the financial condition of those Obligors most recently disclosed to the Bank in any manner.

4.12   **Insecurity.** The Bank in good faith believes that it is insecure.

5.   **Remedies on Default.**

5.1   **Acceleration.** Upon the occurrence of any Event of Default, which shall remain uncured within the time parameters set forth in this Agreement, if any, all Indebtedness of the Obligors owing to the Bank may, at the option of the Bank, be declared to be immediately due and payable, and the Bank may exercise the rights and remedies available to it hereunder, under the Loan Documents, at law or in equity.

5.2   **Any Remedies; Remedies Cumulative.** The remedies provided for in the Loan Documents and this Agreement are cumulative and not exclusive, and the Bank may exercise any remedies available to it at law or in equity.

5.3   **No Waiver.** No delay or failure of the Bank in exercising any right, remedy, power or privilege hereunder shall affect that right, remedy, power or privilege, nor shall any single or partial exercise thereof preclude the exercise of any other right, remedy, power or privilege. No delay or failure of the Bank at any time to demand strict adherence to the terms of this Agreement shall be deemed to constitute a course of conduct inconsistent with the Bank's right at any time before or after any Event of Default to demand strict adherence to the terms hereof.

5.4   **Bank's Right of Set-Off.** Upon the occurrence of any Event of Default, the Bank shall have the right to apply any or all of the Obligors' bank accounts or any other property held by the Bank against any of their Indebtedness owing to the Bank.

6.   **Governing Law, Partial Illegality.** This Agreement, the Loan Documents, and all other agreements of the parties shall be interpreted, and the rights of the parties hereunder shall be determined under the laws of the State of Michigan. Should any part, term, or provision of this Agreement be adjudged illegal or in conflict with any law of the United States or of the State of Michigan, the validity of the remaining portions or provisions of this Agreement shall not be affected.

7.   **Writings Constitute Entire Agreement; Modification Only in Writing.** This Agreement, together with all other written agreements between the Obligors and the Bank, constitutes the entire agreement of the parties, and shall be interpreted in harmony one with the others. None of

4

the parties shall be bound by anything not expressed in writing, and this Agreement cannot be modified except by a writing executed by the Obligors and the Bank. This Agreement shall inure to the benefit of and shall be binding upon all of the parties to this Agreement and their respective successors, estate representatives, and assigns; provided, however, that the Obligors can neither assign nor transfer their rights or obligations under this Agreement without the Bank's prior written consent.

8.   **Headings.**   All section and paragraph headings in this Agreement are included for convenience only, and do not constitute a part of this Agreement.

9.   **Representations and Warranties.**   Each of the representations and warranties made in or pursuant to this Agreement or which are contained in any other agreement or any certificate, document or financial or other statement furnished by or on the Obligors at any time under or in connection herewith, shall be true and correct in all material respects, except as shall have been expressly modified by this Agreement.

10.   **Further Assurances.**   The Obligors agree to execute or cause to be executed such other and further documents, amendments, statements and the like, in such form provided by the Bank, as are deemed reasonably necessary to effectuate the obligations hereunder.

11.   **Name.**   The Obligors' names are exactly as set forth on the first page of this Agreement.

12.   **No Conflict.**   The execution, delivery and performance of this Agreement by the Obligors does not and will not (a) violate any law or court order applicable to them, (b) conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any of their contractual obligations, (c) result in or require the creation or imposition of any lien of any nature whatsoever upon any of their properties or assets, other than in favor of the Bank, or (d) require any approval of any court or governmental authority or any approval or consent of any person under any of its contractual obligations.

13.   **Title.**   The Obligors have good and valid legal title to the property and assets reflected in the financial statements submitted to the Bank, except those subsequently disposed of for value in the ordinary course of business, and there are no liens on the Property securing the repayment of the Note or the performance of the Guaranties, except that certain Claim of Lien by Belfor USA Group, Inc., in the amount of Forty Three Thousand Six Hundred One and 08/100 Dollars ($43,601.08) dated April 22, 2009 and recorded on April 22, 2009, with the Oakland County Register of Deeds at Liber 40239, Page 890.

14.   **Litigation; Adverse Facts.**   Other than as described in this Agreement, there is no pending action, suit, proceeding, investigation, inquiry or arbitration involving any Obligor, at law or in equity (civil or criminal in nature), or to their knowledge, threatened, which might result in (i) any material adverse change in their condition (financial or otherwise); (ii) the possible forfeiture of any of their property to a governmental authority, or (iii) their inability to perform their obligations under this Agreement.

15.   **Payment of Taxes.**   All tax returns and reports required to be filed by the Obligors have been timely filed and other governmental charges upon the Obligors and upon their properties, assets, income and franchises which are due and payable have been paid when due and payable. The Obligors do not know of any proposed, asserted or assessed tax deficiency against them that would be material to their condition (financial or otherwise).   The Obligors are not parties to, bound by, or obligated under any tax sharing or similar agreement.   The Obligors shall furnish the Bank with proof that there are no taxes assessed against the Property which are due and unpaid.

16.   **Disclosure.**   As of the date hereof, no representation or warranty of any Obligor contained in this Agreement or in any other agreement furnished to the Bank by or on their behalf with respect to their business, operations, property or assets acquired by any of them, or their business prospects or condition (financial or otherwise) for use in connection with the transactions contemplated by this Agreement, knowingly contain any untrue statement of a material fact or omits to state a material fact (known to any of them in the case of any document which they did not furnish) necessary in order to make the statements contained herein or therein not misleading.

5

17. **Negative Covenants.** The Obligors hereby represent, warrant, covenant and agree with the Bank that, so long as any of the Indebtedness shall remain outstanding and unpaid, they shall not knowingly furnish the Bank with any certificate or other document that contains any untrue statement of a material fact or omits to state a material fact.

18. **Notices.** All notices, requests and communications shall be in writing, and the sending or giving of such notices, requests and communications shall be sufficient in all respects if sent by first class mail, with postage fully prepaid, or which are personally delivered to the other parties at the addresses set forth above. Unless otherwise provided to the contrary, all notices shall be effective when sent or given. Any party may, by proper written notice hereunder to the other party, change the address to which notices shall thereafter be sent.

19. **Waiver of Jury Trial.** The Obligors knowingly, voluntarily, and intelligently waive their constitutional right to a trial by jury with respect to any claim, dispute, conflict or contention, if any, as may arise under this Agreement or under any documents executed in conjunction herewith, and agrees that any litigation between the parties concerning this Agreement, the Loan Documents, or any related documents shall be heard by a court of competent jurisdiction sitting without a jury. The Obligors confirm to the Bank that they have reviewed the effect of this waiver of jury trial with competent legal counsel of their choice, or have been afforded the opportunity to do so, prior to signing this Agreement and any related documents, and acknowledge and agree that the Bank is relying upon this waiver in entering into this Agreement.

20. **Rights Cumulative.** All of the Bank's rights and remedies under this Agreement and any other documents are cumulative and non-exclusive.

21. **Severability.** If any provision of this Agreement or any other agreements or the application thereof to any person or circumstance is held invalid or unenforceable, and if the Bank so agrees, the application of the remainder of such documents to other persons or circumstances shall not be affected and the provisions of this Agreement and the other agreements shall be severable in any such instance.

22. **Voluntary and Informed Execution.** The Obligors acknowledge and agree that they have fully read, completely understand and voluntarily enter into and execute this Agreement and any other agreements.

23. **Counterparts.** This Agreement may be signed in counterparts, and all of such counterparts, when properly executed by the appropriate parties, together shall serve as a fully executed document, binding upon the parties.

24. **Survival of Agreements, Representations and Warranties.** All agreements, representations and warranties and indemnities made herein shall survive the execution and delivery of this Agreement.

25. **Independence of Covenants.** All covenants under this Agreement shall each be given independent effect so that if a particular action or condition is not permitted by any such covenant, the fact that it would be permitted by another covenant, by an exception thereto, or be otherwise within the limitations thereof, shall not avoid the occurrence of an Event of Default if such action is taken or condition exists.

26. **Venue; Jurisdiction.** The Obligors hereby consent to the jurisdiction of the courts of the State of Michigan and of the United States for the Eastern District of Michigan, and irrevocably agree that, subject to the Bank's absolute and sole discretion, all actions and proceedings relating to this Agreement and any other agreements shall be litigated in such courts. The Obligors irrevocably consent to the service of process out of any such courts in any such action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to it at the address set forth for notices in this Agreement, such service to become effective ten (10) days after such mailing. Nothing herein shall affect the right of the Bank to serve process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against the Obligors or their property in any other jurisdiction. The Obligors irrevocably waive any right they may have to assert the doctrine of *forum non conveniens* or to object to venue.

6

27. **Facsimile Signatures.** The Obligors and the Bank may execute this Agreement and any related documents by facsimile. Facsimile signatures shall have the same force and effect as the originals.

"Obligors"

"Borrower"

M & E HOLDINGS LLC

Date: 05/21/2009

By: _Marilyn Meissner President_
Name: Marilyn Meissner
Its: Member

"Guarantors"

CREATIVE STEPS LEARNING CENTERS, INC., a Michigan corporation

Date: 05/21/2009

By: _Marilyn Meissner, President_
Name: Marilyn Meissner
Its: President

Date: 05/21/2009

_Marilyn Meissner_
Marilyn Meissner, Individually

"Bank"

NATIONAL CITY BANK (f/k/a National City Bank of the Midwest), a national banking association

Date:   05/21/2009

By: _____
Print Name: Stephen C. Folk
Its:  Officer

Birmfield.03654.64176.1095474-2

7

EXHIBIT F



08-093170-CK

JUDGE D. LANGFORD MORRIS
BELFOR USA GR  v  ENGLISH OAKS

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

BELFOR USA GROUP, INC.

      Plaintiff/Counter-Defendant,             Case No. 08-093170-CK

vs.                                  Hon. Denise Langford-Morris

CREATIVE STEPS LEARNING CENTERS, INC.
d/b/a ENGLISH OAKS MONTESSORI AND SCHOOL OF PROTOCOL,

      Defendant/Counter-Plaintiff,

                                                                      /

| **HYMAN LIPPITT, P.C.** | **AMBROSE LAW GROUP** |
|---|---|
| Douglas A. Hyman (P27695) | Daniel D. Ambrose (P53053) |
| H. Joel Newman (P38459) | William A. Godfrey (P72922) |
| Attorneys for Plaintiff/Counter-Defendant | Attorneys for Defendant/Counter-Plaintiff |
| 322 North Old Woodward Avenue | 1007 East West Maple Road |
| Birmingham, Michigan 48009 | Walled Lake, Michigan 48390 |
| (248) 646-8292 | (248) 624-5500 |

**PLUNKETT COONEY**
Susan G. Kowal (P58075)
Attorneys for Petitioner
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, Michigan 48304
(248) 901-4085



BY:
DEPUTY COUNTY CLERK
2010 SEP 16  PM 2:39
RECEIVED FOR FILING
OAKLAND COUNTY CLERK

## PETITIONER, PNC BANK, NATIONAL ASSOCIATION'S MOTION TO REINSTATE CASE, FOR INTERVENTION IN CASE AND TO SET ASIDE JUDGMENT

**NOW COMES** Petitioner, PNC Bank, National Association, successor to National City Bank, successor by merger to National City Bank of the Midwest (collectively "PNC"), a national banking association, by and through its attorneys, Plunkett Cooney, and hereby brings this Motion to Reinstate Case, for Intervention in Case and to Set Aside Judgment, pursuant to Michigan Court Rules 2.209(A)(3) and 2.612(C)(1)(f), in the above action and, in support thereof, states as follows:

560974

900 'd Z81I#                                    82:40  IIOZ/40/S0

1. On July 21, 2008, Plaintiff, Balfour USA Group, Inc. ("Balfour) commenced this action against Defendant, English Oaks Montessori and School of Protocol English Oaks ("English Oaks") seeking damages and the foreclosure of it construction lien.

2. Upon information and belief, Balfour entered to an agreement with English Oaks whereby Balfour agreed to perform certain improvements and repairs to a building located at 891 Union Lake Road, White Lake, Michigan 48386 (the "Property").

3. M & E Holdings, LLC, a Michigan limited liability company ("M & E Holdings"), is the owner of record of the Property.

4. PNC holds a Mortgage given by M & E Holdings dated February 27, 2006 and recorded on September 11, 2006 in Liber 38092, Page 60, Oakland County Records which encumbers the Property ("Mortgage"). (*See* Exhibit A attached hereto).

5. That this Honorable Court entered a Judgment on March 18, 2010 awarding Balfour a monetary judgment against English Oaks and allowing for the foreclosure of Balfour's construction lien upon the Property. (*See* Exhibit B attached hereto).

6. Despite having a recorded mortgage interest in the Property, Balfour failed to name PNC as an interested party.

7. The Complaint in this matter included a count for lien foreclosure on the same property secured by PNC's Mortgage.

8. PNC has a right to intervene in the present action pursuant to MCR 2.209(A)(3), or alternatively, MCR 2.209(B)(2).

9. The Judgment, in its current form, states that the "purchase [sic] at such sale shall receive a Sheriff's Deed on the property which deed shall be free and clear of the claims of Defendant *and of any persons or parties claiming any interest in the property under or*

*through the acts of the Defendant*." The judgment, then, suggests that PNC's Mortgage would be foreclosed upon the sheriff's sale.

10. Balfor failed to properly comply with the provisions of the Construction Lien Act by failing to properly notify PNC of the foreclosure action.

11. MCL 570.1117(4) states that "[e]ach person who, at the time of filing the action, has an interest in the real property involved in the action which would be divested or otherwise impaired by the foreclosure of the lien, shall be made a party to the action."

12. PNC was not named as a Defendant in the Complaint.

13. PNC has a recorded Mortgage lien interest in the Property, which would be jeopardized if not named a party to this action.

**WHEREFORE**, the Court is asked to grant Petitioner, PNC Bank, National Association's, successor to National City Bank, successor by merger to National City Bank of the Midwest, Motion to Reinstate Case, for Intervention in Case and to Set Aside Judgment in this matter and enter an Order allowing it to file its initial responsive pleadings within 14 days of the Order allowing intervention, and award such other and further relief deemed fair and equitable.

Respectfully submitted,

**PLUNKETT COONEY**

By: *[signature]*

Susan G. Kowal (P58075)
Attorneys for Petitioner
38505 Woodward Avenue, Suite 2000
Bloomfield Hills, Michigan 48304
(248) 901-4085

Dated: September 16, 2010

EXHIBIT G

**STATE OF MICHIGAN**
**IN THE 6TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

BELFOR USA GROUP, INC.

    Plaintiff/Counter-Defendant,

vs.

CREATIVE STEPS LEARNING CENTERS, INC.
d/b/a ENGLISH OAKS MONTESSORI AND SCHOOL OF PROTOCOL,

    Defendant/Counter-Plaintiff.

Case N: 08-093170-CK
Hon. D.

JUDGE D. LANGFORD MORRIS
BELFOR USA GR v ENGLISH OAKS

---

HYMAN LIPPITT, P.C.
DOUGLAS A. HYMAN (P-27695)
H. JOEL NEWMAN (P38459)
Attorneys for Plaintiff/Counter-Defendant
322 North Old Woodward Avenue
Birmingham, Michigan 48009
(248) 646-8292

DANIEL D. AMBROSE (P53053)
AMBROSE LAW GROUP
Attorneys for Defendant/Counter-Plaintiff
1007 E. West Maple Rd.
Walled Lake, MI 48390
(248) 624-5500



2010 MAR 18 AM 11: 15

RECEIVED FOR FILING
OK AND COUNTY CLERK

BY: DEPUTY COUNTY CLERK

---

### JUDGMENT

At a session of said Court held in the
Courthouse, in the City of Pontiac,
County of Oakland, State of Michigan

---

PRESENT: HON. D. LANGFORD MORRIS
CIRCUIT COURT JUDGE

The Court previously having entered Summary Disposition on all counts in favor

of the Plaintiff, and having given Defendant until December 9, 2009 to move for

reconsideration, Defendant's counsel having stated he did not move for reconsideration

because the Summary Disposition was correct, the Court having ordered briefs on

{00131665}

damages no later than December 30, 2009, the Plaintiff having timely filed its brief and Defendant not having filed until January 27, 2010, the Court having heard the Plaintiff's Motion To Determine Damages and To Enter a Judgment in favor of Belfor, the Complaint seeking a sum certain and foreclosure, and the Court being duly advised in the premises;

*142,800 Hm wN*

IT IS HEREBY ORDERED that Defendant pay the Plaintiff $153,436.00 including attorney's fees and costs.

IT IS FURTHER ORDERED that Defendant pay the Plaintiff statutory interest in the amount of $8,722.40 to date and continuing at the rate of $15.40 per diem.

IT IS FURTHER ORDERED that Belfor's claim for foreclosure is granted in accordance with the following terms and conditions over the real property (the "Property") secured by the lien (as defined in the Complaint) which is land in the City of White Lake, Oakland County, Michigan, as is further described as follows:

Real estate situated in the Township of White Lake, Oakland County, State of Michigan, described as:

T3N R8E Sec 36 part of West path of NW beginning on East line thereof South 02-00-00 E 784.74 feet from North Section line thence South 02-00-00 East 215.8 feet then North 44-15-00 W 294.36 feet then North 88-00-00 East 202 feet to the beginning .50 AY546.

Commonly known as 891 Union Lake Road, White Lake, Michigan 48386. Tax Parcel Identification Number: Y12-36-102-002.

If Defendant fails to pay Plaintiff the amounts above mentioned immediately upon the entry of this Final Judgment, Plaintiff may forthwith and without further order of this Court sell by foreclosure sale the interest held by Defendant as above described, and the costs and expenses of sale, shall publish notice of the Sheriff's judicial sale of real

(00131665)2

estate on foreclosure for five (5) consecutive weeks and shall provide for posting of the notice in the proper manner. At the conclusion of said publication, Oakland County Sheriff shall conduct a foreclosure sale of the property. The purchase at such sale shall receive a Sheriff's Deed on the property which deed shall be free and clear of the claims of Defendant and of any persons or parties claiming any interest in the property under or through the acts of the Defendant.

Plaintiff, its successors or assigns, or any of the parties in this suit may become the purchaser of the property at the foreclosure sale; any bid by Plaintiff, its successors or assigns shall be deemed to be a credit bid against the indebtedness due Plaintiff up to the total amount of the indebtedness.

The Sheriff shall execute a deed to the purchaser on the sale. The sale shall be confirmed upon Motion duly noticed for hearing by any party to this action or by any purchaser at the foreclosure sale.

The Oakland County Sheriff, out of the proceeds of the sale, is to pay Plaintiff (or to Plaintiff's attorneys) the costs in this action to be taxed, and also the amount so ordered to be due as mentioned, and interest at the above rate from the date of this judgment, or so much of it as the amount realized from the sale of the premises mentioned previously will pay of the total sum due. The Sheriff is to take receipt for the amounts so paid, and file them with a report of the sale and of the Sheriff's doings; and the Sheriff is to bring the surplus monies arising from the sale, if any, into the Court without delay, to abide the further order of this Court.

Six months from the date of the sale, any and all persons claiming an interest in the property shall be forever barred and foreclosed of any from all equity of redemption

{00131665}3

and any other claim of nay kind or nature against the property with exception being the claims for property taxes.

That if the moneys arising from the sale are insufficient to pay the amount ordered to be due to Plaintiff with interest, costs, and the expenses of sale as mentioned above, the Oakland County Sheriff shall specify the amount of the deficiency in the report of the sales, and that in the coming in and confirmation of the report of sale, Defendant, who this Court has judged personally liable for the debt secured by the mortgage, shall pay to Plaintiff the amount of deficiency, with interest from the date of the Sheriff's report.

This Court shall retain jurisdiction solely to enter any further Orders as are consistent with the remedies and relief available at law, including an award of a deficiency judgment if the amount bid is insufficient to satisfy the entire indebtedness as described in this Judgment.

This is a final order and closes this case.

A TRUE COPY
BILL BULLARD JR.
Oakland County Clerk - Register
By _C. Lee_ Deputy

CIRCUIT COURT JUDGE

Approved as to form and substance

Defendant's Counsel

P38459

plaintiffs' counsel

{00131665}4

EXHIBIT H

# STATE OF MICHIGAN

RECEIVED FOR FILING
## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND
OAKLAND COUNTY CLERK

*Belfor USA Group*
_____
Plaintiff,

2009 NOV 20 PM 2: 26

OAKLAND
COUNTY **08-093170-CK**

-v- *English Oaks Montessori*
_____
Defendant.

BY: _____
DEPUTY COURT CLERK

Case No. C

JUDGE D. LANGFORD MORRIS
BELFOR USA GR v ENGLISH OAKS

## ORDER

At a session of said court, held in the City of
Pontiac, Oakland County, Michigan, this _____
day of _____, 20____.

Present: **DENISE LANGFORD MORRIS**
Circuit Court Judge

This matter having come before the Court on (Plaintiff / Defendant): *Deem affirmative defenses*

*Plaintiff* _____'s, Motion for *Grant S.J. on the complaint* *admitted* *on liability*
Name               State nature of motion

*Deny default*

and the Court being advised in the premises;

IT IS HEREBY ORDERED that the motion is:

☒ Granted

☐ Denied

☐ Granted in part, as explained in the comment below.

THIS ORDER CONTAINS A DATE
NOTICE
SET BY THE COURT. YOU WILL NOT
RECEIVE FURTHER NOTICE OF THIS
DATE.
JUDGE'S CHAMBERS

Comment: *The only remaining issue is damages*
*Defendant to file motion for relief from judgment to be granted*
*an opportunity to answer affirmative defenses, to be heard on*
*December 9, 2009. Both parties to file briefs on issue*
*of damages by end of December to advise court on*
*how to determine damages. Bench trial for damages on 2/22/10*
*if necessary.*

_____
**JUDGE DENISE LANGFORD MORRIS**, Circuit Court

APPROVED AS TO SUBSTANCE AND FORM
_____ P72922
_____ P38459

# EXHIBIT I

# BELFOR (●)

PROPERTY RESTORATION

## WORK AUTHORIZATION
License # 2132160913

The undersigned (insured) _English Oaks Montessori School_ of

_891 Union Lake_ _White Lake_ _MI_ _____
Address     City     State     Zip

represents that he/she/they are owners of/or agent for the hereinafter specified property (and/or its contents) and hereby authorize and direct Belfor USA Group, Inc. ("Contractor") to provide all labor, equipment and materials required to properly repair the specified real property, contents or structure commonly known as:

_891 Union Lake_ _White Lake_ _Mi_ _48386_
Address     City     State     Zip

It is understood and agreed that Contractor will perform all repair work in accordance with our General Conditions, will have a policy of insurance in full force, will comply with local safety standards and will perform all work according to local building codes. A one-year workmanship warranty will be presented upon full payment for the work performed. ~~The undersigned hereby transfers, assigns and conveys to Contractor his/her/their right, title and interest in and to the insurance policy proceeds and all drafts for work performed or to be performed by Contractor. Accordingly, undersigned authorizes and directs their insurer (named below) to make "Belfor USA" a payee on all insurance drafts for all insurance work performed by Contractor on the above damaged property. The undersigned also agrees to immediately endorse and tender all drafts as produced to the Contractor.~~

All insurance work performed by the Contractor is subject to the terms of the insured policy of insurance which sets the scope and price of the work based upon industry standards. All uninsured code-upgrade work, depreciation and insurance deductibles are the responsibility of the undersigned or Owner. The undersigned has the right to cancel this Work Authorization prior to the midnight of the 3rd business day of signing this agreement by writing and delivering a written cancellation request to Contractor by such time. The undersigned also agrees to and understands the General Conditions stated below.

_The partner agree to have the 1st Floor Completed by March 6, 2007. M.E.M_

Date: _____

$ _N/A_     _2/21/07_
AMOUNT (IF KNOWN)     DATE

X _Newton E Ninarau_
INSURED-OWNER-AUTHORIZED REPRESENTATIVE

_David McBride_
BELFOR REPRESENTATIVE

_____
INSURED-OWNER-AUTHORIZED REPRESENTATIVE

_____
INSURANCE COMPANY

_____
POLICY NUMBER

### General Conditions

Owner agrees to allow timely inspections by municipal inspectors and/or mortgage company agents and to assist with obtaining any third party payee signatures on all insurance drafts so that Belfor can be timely paid in for any reason your claim is denied by your insurance carrier or they refuse to pay the costs of any and/or all insurance work performed by Contractor, or you otherwise delay or prevent the payment of said insurance claim or use it for other purposes, then the insured-owners of the above mentioned property will be severally liable for all costs of services performed. The Contractor and undersigned acknowledge and agree that the Contractor shall have no liability for, and shall be indemnified and held harmless from and against, all claims, damages, liabilities and costs arising out of or relating to the presence, discovery or failure to discover, remove, address, remediate or cleanup environmental or biological hazards including, but not limited to: mold, fungus, hazardous waste, substances or materials, or asbestos unless for any reason the amount due under this Work Authorization is not paid when due, the Contractor shall be entitled to its expenses and attorneys' fees incurred in the collection of this agreement with interest on the unpaid balance at the rate of 1.5% per month or the rate permitted by law. The undersigned permits Contractor to obtain a personal credit report to ensure that the insurance proceeds for this project are not in jeopardy. Any controversy or claim arising out of or relating to this agreement, or breach thereof, may be submitted to a court of competent jurisdiction. Contractor is in good standing with the Better Business Bureau. Contractor reserves their right to terminate this contract should the event breach any of its terms, conditions or the assurance of payment.

BELFORUSA 11.2
REV 9/04

HEADQUARTERS